UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| URLEEN NAUGHTON | : | CASE NO.: |
|     Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| ADAM GUTCHEON, JANE GARIBAY, | : | |
| DONALD TRINKS, LISA BRESS, SALLY | : | |
| GROSSMAN; TARIQ JAMAAL; and BRIAN | : | |
| SMITH | : | |
|     Defendants | : | MARCH 23, 2021 |

## COMPLAINT

### I. INTRODUCTION

1. This is a civil action for damages for conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. Section 1985(3), tortious interference with contractual relations, and defamation.

### II. PARTIES

2. Plaintiff, Urleen Naughton ("Naughton"), is an African American individual residing in the Town of Windsor, Connecticut. Naughton is originally from the U.S. Virgin Islands. At all times relevant to this Complaint, Naughton was employed as the Executive Director of the Windsor Housing Authority.

3. Defendant, Adam Gutcheon ("Gutcheon"), is a Caucasian individual residing in Windsor, Connecticut. At all times relevant to this Complaint, Gutcheon has been a member of the Board of Commissioners of the Windsor Housing Authority. Gutcheon is being sued in his individual capacity.

4. Defendant, Jane Garibay ("Garibay"), is a Caucasian individual residing in Windsor, Connecticut. At all times relevant to this Complaint, Garibay has

been a state representative for the Town of Windsor.  Garibay is being sued in her individual capacity.

5. Defendant, Donald Trinks ("Trinks"), is a Caucasian individual residing in Windsor, Connecticut.  At all times relevant to this Complaint, Trinks has been the Mayor of Windsor, Connecticut.  Trinks is being sued in his individual capacity.

6. Defendant Lisa Bress ("Bress") is a Caucasian individual residing in Windsor, Connecticut.  At all times relevant to this Complaint, Bress has been a member of the Town Council in Windsor, Connecticut.  Bress is being sued in her individual capacity.

7. Defendant Sally Grossman ("Grossman") is a Caucasian individual residing in Windsor, Connecticut.

8. Defendant Tariq Jamaal ("Jamaal") is an individual residing in Windsor, Connecticut.

9. Defendant Brian Smith ("Smith") is an individual residing in Windsor, Connecticut.

### III.  JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because it asserts a federal question under 42 U.S.C. Section 1985.

11. This Court has subject matter jurisdiction over Naughton's state law claims pursuant to 28 U.S.C. Section 1367 because the claims are so related to her

federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in the District, as each of the actions giving rise to this lawsuit occurred within this District.

## IV. FACTS

13. The Windsor Housing Authority ("WHA") was created in February 1968 by a Cooperative Agreement between the Town of Windsor and the Connecticut Department of Housing.

14. The purpose of the WHA is to provide safe and affordable housing to low-income, elderly and disabled residents of the Town of Windsor.

15. A large portion of the WHA's residents are African Americans and other minorities.

16. The Town of Windsor has a history of discrimination against African Americans and other minorities.

17. Public officials of the Town of Windsor have stated that they want Windsor "to be the way it used to be" before minorities moved into town.

18. Since August 2018, Naughton has served as the Executive Director of the WHA.

19. Since becoming Executive Director, Naughton has taken the WHA from a deficit to a surplus and has overseen the modernization of many WHA practices and procedures.

20. Naughton has been recognized by the United States Department of Housing and Urban Development ("HUD") as a "high performer" in her role as Executive Director.

21. Effective August 20, 2020, Naughton and the WHA entered into a five-year employment contract (the "Contract").

22. Defendants are aware of the existence of the contract between Naughton and the WHA.

23. Pursuant to the terms of the Contract, Naughton may only be terminated by the WHA for one or more of the following reasons: insubordination against reasonable rules of the WHA; Serious Misconduct; Disability as shown by competent medical evidence; or Deficient Performance, provided that before terminating Naughton for deficient performance she must be provided with a written statement identifying with specificity the performance deficiencies and provided with 120 days to correct said deficiencies.

24. Beginning in approximately September 2020, Defendants Bress, Gutcheon, Garibay, Trinks and Grossman began a concerted effort to oust Naughton from her position as Executive Director of the WHA because of her race.

25. In November 2020, residents of WHA properties, at the behest of Bress, Garibay, Gutcheon and Grossman, circulated a petition seeking, *inter alia*, to have Naughton removed due to alleged problems and issues with the WHA's property at Millbrook Village.

26. The petition was riddled with falsehoods, including but not limited to: that Naughton was harsh and abusive towards residents; that Naughton told

residents they should be glad they have a roof over their heads and that if they did not like things they should go buy a house; that Naughton clandestinely removed two computers from the Community Room; that Naughton relentlessly bashed and smeared the previous Executive Director; that Naughton fired experienced and competent employees and replaced them with ineffective and incompetent workers of her own choosing; that Naughton lies recklessly and shamelessly; that Naughton threatened and defrauded tenants; and that Naughton frequently threatened residents with eviction if they disagreed with her.

27. The petition was presented to the Windsor Town Council.

28. In November 2020, the then-Chair of the WHA Board of Commissioners, Randy McKenney ("McKenney"), presented his annual report to the Windsor Town Council.

29. The meeting quickly degenerated into a figurative public lynching of McKinney.

30. McKenney was attacked over the petition but was not provided with a copy of the petition nor given an opportunity to defend himself, Naughton, or anyone else affiliated with the WHA.

31. Instead, the petition was forwarded to the Connecticut Housing Finance Authority ("CHFA") and HUD.

32. When the WHA Board finally received a copy of the petition on January 12, 2021, it immediately hired an outside law firm to conduct an investigation.

33. The outside investigation turned up no wrongdoing by either the WHA or Naughton.

34. Gutcheon was appointed as a Commissioner of WHA in November 2020 by the Windsor Town Council at the behest of Garibay and Bress.

35. At his first WHA Board meeting in November 2020, Gutcheon stated that "Windsor is a very racist town, and they try to sweep it under the rug as if it does not exist."

36. At the next meeting, on December 15, 2020, Gutcheon moved to have the statement stricken from the official Board minutes, claiming that he was either misquoted or misunderstood.

37. As a Commissioner, Gutcheon has made it clear that his goal is to force Naughton out of her position as Executive Director.

38. Prior to the December 15, 2020 Board meeting, Gutcheon sent an email in which he sought to add the meeting's agenda a motion to go into executive session to discuss "the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee."

39. In an editorial published in the Windsor Journal in January 2021, Gutcheon falsely and maliciously stated, *inter alia*, over 90 % of the residents of Millbrook Village signed the petition (when, in fact, it was only signed by 27 residents, well under 50 % of the residents); that the WHA Board failed to investigate the petition; that Commissioners were praised for their loyalty; and that member of the WHA Board mocked members of the Town Council.

40. Gutcheon then called on all members of the Board except himself, all of whom were African American, to resign.

41. Subsequently, McKenney resigned and was replaced on the Board of Commissioners by Carol Engelmann ("Engelmann") (Caucasian), who is Garibay's sister.

42. Gutcheon has been particularly harsh in his criticism of Naughton since being appointed to the WHA Board.

43. On multiple occasions, Gutcheon has made false statements about Naughton, including but not limited to the following: that Naughton is running a deficit at WHA when, in fact, she was running a surplus; that residents were being forced by Naughton to pay to have their belongings removed as they moved from one unit to another to accommodate renovations; and that Naughton is harassing and intimidating residents.

44. On or about January 7, 2021 Gutcheon told Smith that he would have the media involved and will continue to add media pressure until Naughton was removed as Executive Director.

45. Gutcheon also told Smith he would change the WHA's management and staff once the Town Council had replaced enough commissioners with new commissioners who would side with him to vote Naughton out.

46. On at least one occasion, Bress made a false report to the Windsor Health Department of no heat in a unit in an effort to make it appear that Naughton was unable to maintain safe housing for WHA tenants.

47. On multiple occasions, Garibay has made false statements to HUD in an effort to damage Naughton's reputation and get her fired from her position as Executive Director of the WHA.

48. For example, Garibay falsely told HUD that Naughton was running a deficit at WHA when, in fact, she was running a surplus.

49. On February 26, 2021, the Windsor Journal published a letter to the editor from Grossman, in which Grossman falsely stated that Naughton had hired an outside law firm without the knowledge or permission of the "Housing Commission;" that the WHA improperly was contesting the appointment of a new tenant commissioner (Jamaal) because of his involvement in the petition, and that retaliatory rent increases in "access" (sic) of 30 % had been imposed on residents who have chosen to speak out.

50. On or about March 19, 2021, Grossman and Smith jointly wrote a letter to the editor of the Windsor Journal, which Grossman then sent to every member of the WHA Board of Commissioners in an effort to damage Naughton's reputation and have her removed as Executive Director of the WHA.

51. In this letter, Smith and Grossman made many false statements, including but not limited to: that Naughton terminated the existing landscaping contractor immediately upon being hired and instead hired "her people;" that Naughton threatened not to renew Smith's lease if he wasn't quiet; and that Naughton bullied, harassed and threatened residents.

52. In this letter, Smith and Grossman specifically asked the Board to terminate Naughton's employment.

y

53. Upon information and belief, Trinks was in contact with Smith and Grossman prior to the letter being printed, and he texted to Smith commending him on the letter.

54. On Sunday, March 21, 2021, Defendants Gutcheon, Garibay, Trinks, Grossman, Jamaal, and Smith held a meeting at 1:00 p.m. with Engelmann and residents of Milbrook Village to discuss Naughton's removal.

55. The two African American commissioners, Robert Mack ("Mack") and Herman Woodard ("Woodard"), were neither invited to nor informed of this meeting.

56. At this meeting, a plan was discussed to replace either Mack or Woodard with a new commissioner who would vote along with Gutcheon and Engelmann first to suspend Naughton and then to terminate her, in violation of her contract with the WHA.

**V.   COUNT ONE – VIOLATION OF 42 U.S.C. SECTION 1985(3) (AS TO ALL DEFENDANTS)**

57. Based on the foregoing, Defendants have conspired to deprive Naughton of equal privileges and immunities under the laws.

58. Based on the foregoing, Defendants each have taken acts in furtherance of the conspiracy.

59. Based on the foregoing, Defendants' actions are based on an invidiously discriminatory animus towards Naughton.

60. The actions of Defendants have caused Naughton to suffer damages, including, but not limited to, damage to reputation, emotional and physical distress, as well as loss of enjoyment of life.

61. Naughton also has incurred, and continues to incur, attorneys' fees and costs.

9

## VI. COUNT TWO – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS (AS TO ALL DEFENDANTS)

62. Based on the foregoing, Defendants intentionally and maliciously interfered with Naughton's contractual relationship with WHA.

63. The actions of Defendants have caused Naughton to suffer damages, including but not limited to a reduced ability to effectively perform her duties under the contract with WHA.

## VII. COUNT THREE – DEFAMATION (AS TO DEFENDANTS GUTCHEON, GARIBAY, GROSSMAN, JAMAAL, BRESS, AND SMITH)

64. Based on the foregoing, Defendants Gutcheon, Garibay, Grossman, Jamaal, Bress, and Smith willfully and maliciously made false statements about Naughton.

65. Defendants Gutcheon, Garibay, Grossman, Jamaal, Bress, and Smith knew the statements were false or recklessly disregarded the falsity of the statements.

66. The actions of Defendants Gutcheon, Garibay, Grossman, Jamaal, Bress, land Smith have caused Naughton to suffer damages, including, but not limited to, damage to reputation, emotional and physical distress, as well as loss of enjoyment of life.

## VIII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests:

a. Compensatory damages

b. Damages for emotional distress, injury to reputation, loss of self-esteem and consequential damages;

c. Punitive damages;

d. Costs;

e. Attorneys' fees;

f. Interest; and

g. Such other and further relief as the Court deems just and equitable.

Plaintiff demands a trial by jury on all issues so triable.

PLAINTIFF, URLEEN NAUGHTON

*Anthony J. Pantuso, III*
Anthony J. Pantuso, III
Fed. Bar No. ct11638
Law Offices of Anthony J. Pantuso, III
4 Research Drive, Suite 402
Shelton, CT 06484
203-726-0284
apantuso@pantusolawfirm.com