UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URLEEN NAUGHTON ) **Plaintiff** ) ) ) ) ADAM GUTCHEON, et al., ) **Defendants.** ) ) | CASE NO.: 3:21-cv-402 (KAD) **PLAINTIFF'S MOTION TO LEAVE TO FILE A SECOND AMENDED COMPLAINT** October 27, 2021 |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AS TO DEFENDANTS WINDSOR JOURNAL WEEKLY, ANTHOINT ZEPPARI, THE JOURNAL INQUIRER AND JOE CHAISSON.**

**COMES NOW THE PLAINTIFF**, Urleen Naughton by and through counsel moves to amend her First Amended Complaint filed on May 17, 2021, pursuant to the Federal Rules of Civil Procedure, and Rule 7 of the Local Rules, specific to The Windsor Journal Weekly (Hereinafter WJW), and its reporter, Anthony Zepperi, The Journal Inquirer (hereinafter JI), and its reporter, Joe Chaisson.

The Plaintiff, Urleen Naughton seeks to file this amended Complaint, which is limited in scope as to Defendants Windsor Journal Weekly, and its reporter, Anthony Zepperi, The Journal Inquirer, and its reporter, Joe Chaisson. More specifically, the amendment does not request to change the substance of any of the Counts already asserted, or to add new parties. Rather, it is intended to sharpen the assertions made against each of the four defendants, and to correct the counts applicable to the four defendants.

Plaintiff's counsel has contacted the defendants' counsels, and as of this writing, Attorney Weinstein who represents the Journal Inquirer has consented to Ms. Naughton's

1

Second Amended Complaint. He has not received a response from Mr. Springer who represents the Windsor Journal Weekly and Anthony Zepperi, its reporter.

As a preliminary matter, Ms. Naughton requests that the Court incorporate by reference her First Amended Complaint filed on May 17, 2021. **Ct. Doc. 36.**

Ms. Naughton seeks to add facts which were not available to her when she filed her amended complaint, in that some of the defamatory content- articles/publications were taken down from the News organizations websites, pertaining to their publications, the named defendants, and their reporters. Based on this fact, the plaintiff counsel had to contact persons, who still had copies of "some" of the articles/publications for review, forming the basis of this amended complaint.

*(i)* <u>Newspaper Publications.</u>

While Defendants Gutcheon, Grossman, and Smith mounted their campaign against Ms. Naughton through the Windsor Journal Weekly (hereinafter, WJW), The Hartford Courant (hereinafter, The Courant) and the Journal Inquirer Newspaper (hereinafter, JI). Articles were written by Defendant Joe Chaisson of the Journal Inquirer, Steven Goode of the Hartford Courant (not a defendant in this case), and Anthony Zepperi of the Windsor Journal Weekly, affectively parroting the false claims from the "petition," that were distributed to them. At all relevant times, the defendants timed their scandal-laden letters, and opinion-hit-pieces (Op-eds) to the newspapers (JI, the Hartford Courant and WJW) to coincide with their stated plans to "pressure" Ms. Naughton until she was terminated. All told there were over twenty-four articles/Op-eds that were written by the defendants, and their media conspirators between December 16, 2020, and May 11, 2021, one day after the defendants terminated Ms. Naughton.

### Articles and Dates of Publication - (a through s):

(a) **December 20, 2020, WJW- Letter to the Editor, "There so a Problem in Housing Authority," Written by Adam Gutcheon.** In this piece, he represented that "ninety (90) percent of the residents signed the petition; that tenant feared retaliation and if they approached the WHA Board; that members of the Town Council were mocked and reviled in their absence by the WHA Board; and if they were complicit in the abandonment of their duties, they should resign."

(b) **January 2021, WJW- Letter to the Editor, "Can We Have a Conversation?" Written by Commissioner Robert Mack.** Asserted that Gutcheon had communicated with HUD and CHFA instead of bringing the residents' complaints to the WHA Board.

(c) **In the same publication (January 20221), and the next page of the same edition of the WJW-Letter to the Editor, "It's Time for Action-Not Words." Written by Adam Gutcheon."** "This piece was written as a rebuttal to Robert Mack's letter and asserted that "the WHA received a copy of the petition on December 10, 2020; the WHA went nine (9) months without holding a meeting; that the complaints arising from the petition was shared with the WHA Board of Commissioners, over a month ago. That he communicated with HUD and CHFA, he was the only commissioner who did a course on housing and talked with the residents."

(d) **December 22, 2020, Hartford Courant Article – "Officials Disagree Over Cause of Delay to $3.8 million Public Housing Renovation Project." written by Steven Goode.** "That the petition was published by the Town Council to the Hartford Courant," rather than to the WHA Board.

(e) December 16, 2020, Hartford Courant Article- "Tenants of Windsor Housing Project Allege Years of Poor Treatment," written by Steven Goode. (detailing **seven specific point misrepresentations**): "That tenants were forced to pay to move their belongings from their old units to newly renovated units; that the petition's allegations include poor or no response from the maintenance department on needed repairs like lack of heat and waste from toilets rising up through plumbing in other rooms, as well as threats and harassment of residents by the management team and executive director; that [tenants needed] to go buy [themselves] a house and . . . [they needed] to be grateful to have a roof over their head(s) at all; and threats were made to tenants."

(f) January 22, 2021, WJW Article, authored by Anthony Zepperi- "Chair of WHA Board of Commissioners Resigns Member Calls for Good Faith Investigation." Alleged that "fifty (50) tenants signed the petition and the (detailing seven **specific point misrepresentations as (e) above)**.

(g) March 26, 2021, WJW Article, authored by Anthony Zepperi, "WHA Commission Has a New Chair. Lawsuit Filed."

(h) January 29, 2021, WJW Article, authored by Anthony Zepperi- "WHA Tenants ask for Safety and Respect." This article detailed the same **seven specific points detailed in (e and f) above.**

(i) January 27, 2021, Journal Inquirer, authored by Joe Chaisson- "Protests Held before Windsor Housing Authority Meeting."

(j) April 1, 2021, Journal Inquirer, authored by Joe Chaisson- "Windsor Housing Director: Attacks are Race-Based."

(k) April 13, 2021, Journal Inquirer, authored by Joe Chaisson- "Windsor Residents:

4

**Authority Executive Director tried to Intimidate them out of Complaining."** In this article, Defendant Brian Smith wrote a letter asserting that the Executive Director terminated the previous landscaper and 'hired her own people;' that from spring 2019, no cleaning was being done; that the lawn at Fitch Court Apartments were no longer being taken care of; that Naughton threatened not to renew his lease if he wasn't quiet; that to threaten people with their lease was abuse; and that the executive director told him 'he was lucky to [have] gotten [into] his [apartment], *inter alia.*

(l) January 28, 2021, **Hartford Courant Article- "Millbrook Village Residents rally against Housing Authority Leadership amidst Board Leadership Changes. Written by Steven Goode.** This article detailed the same **seven specific points detailed in (e, f and h) above.**

(m) May 10, 2021, **Hartford Courant ". . . Executive Director Terminated, Committee formed to Investigate Tenure." Written by Steven Goode.** In this article, defendant Gutcheon detailed that he intended to investigate the tenure of the former executive director, Urleen Naughton [in term of] the books, papers, records, accounts, contracts, deeds, regulations, or documents relating to official misconduct committed by or at the will of Ms. Naughton."

(n) May 11, 2021, **Journal Inquirer, "After Firing of Housing Authority Director, Windsor Tenants hope for a Change," Written by Joe Chaisson.** The article outlined that Ms. Naughton was terminated for "lack of candor and violation of the Commissions personnel policy, for her failure to turn over a copy of her contract (while she was on official sick leave)." The article also reinforced the allegations that under Naughton, "the WHA allegedly provided slow maintenance . . . and [presented] a general attitude of disrespect to tenants;" and that "Naughton had not responded to multiple requests for comment."

**(o) March 28, 2021, <u>Hartford Courant "Windsor Housing Authority Executive Director files Federal Lawsuit." Written by Steven Goode.</u>** In this article, Defendant Gutcheon was asked for a comment and referred to Ms. Naughton as "depraved, for filing suit against low-income residents of Windsor public housing." This article further detailed the same **<u>seven specific points detailed in (e, f, h and l) above</u>**.

**(p) March 26, 2021, <u>Journal Inquirer, "Windsor Housing Authority director sues Officials, Tenants, Accusing Them of Bias." Written by Joe Chaisson.</u>** The lawsuit made reference to the fact that Ms. Naughton through her attorney had filed a suit against officials, and tenants based on racism. It also quoted Defendant Garibay as saying that their [meeting held on March 21, 2021] was not a secret, and did not include discussion of Naughton's removal . . ., was called at the last minute because U.S. Rep. John Larson was in the area, and that all she did was contact Taariq Jamaal, the resident commissioner. . . ." The article also quoted Defendant Gutcheon who stated that "the lawsuit could have a serious ripple effect on other communities. . . [especially by her suing} several public officials, two of her own tenants, two members of the commission and a state representative for doing their jobs in a way she doesn't approve of . . . just the cost of defending this, is going to make people in other communities think twice about speaking up against power." The article also mentioned that "Ms. Naughton previously sued the Salvation Army, her former employer . . . for violations of her civil rights . . . ."

**(q) March 26, 2021, and March 28, 2021, <u>Hartford Courant "Executive Director files Federal Lawsuit." Written by Steven Goode.</u>** In this article, Defendant Gutcheon was asked for a comment and referred to Ms. Naughton as "depraved, for filing suit against low-income residents of Windsor public housing." This article further detailed the same **<u>seven specific points detailed in (e, f, h, l and o) above.</u>**

6

(r)     **On or around March 19, 2021, Article and Publication by Defendant Smith**

**On or around March 19, 2021, Defendants Smith and Grossman, jointly published an article in the WJW,** which was replete with falsities about Ms. Naughton. In this article, Defendant Smith represented that as soon as Ms. Naughton was hired as the executive director, "she terminated the contract of an existing landscaping company and instead 'hired her own people;' he noticed "that cleaning was no longer being done. That the lawn outside Fitch Court, which had always been mowed and maintained properly, was no longer being taken care of." That "there were areas of grass that were mowed just once in the summer of 2019 and then again once in the summer 2020, meaning that several areas of grass had grown over a foot long and remained so for the majority of the summer."

Added to this, "we often have overflowing garbage and recycle bins, much of the excess trash [got] blown away into the lawn surrounding our building. There has been a huge pile of broken glass right by the dumpster that has been there for over a year. Broken tree limbs from last year's storm litter the property to this day."

In the Spring of 2019, "I talked to the Executive Director about these issues. I was falsely told that everything was better than ever under her management, despite the obvious deteriorating state of the grounds. Since the lawn was about a foot and a half high at the time, I pointed to it and pressed the issue." He also claimed Ms. Naughton "told [him] that this is the best it ever looked, and I (sic) wasn't quiet, my lease would not be renewed. Instead of addressing resident concerns, the Executive Director is confrontational and threatening. When hearing from residents about their concerns, Ms. Naughton attacks the messenger, with no regard for the message."

(s)     **On February 26, 2021, Article and Publication by Defendants Grossman**

7

**In an editorial published by the WJW on February 26, 2021:**

"Dozens of Millbrook Village residents signed a petition detailing allegations of abuse by the Windsor Housing Authority." These allegations also brought to light "issues having been ongoing since 2019, including threats of eviction for residents who spoke out about living conditions, lack of handicapped accessibility, non-functioning toilets in single bathroom units, and moving residents into units without functioning stove or refrigerator." Rather than resolve these issues, "employees of the Windsor Housing Authority have called residents drug dealers and liars and indicated a lack of desire to investigate these allegations further." They have "also demanded residents tell them whether or not they've signed the petition."

That "the executive director . . . , Urleen Naughton, who was directly named by several residents in their complaints, has hired an outside law firm to conduct an investigation into these allegations. However, this same firm represented Ms. Naughton in a law suit (sic) against the Salvation Army, in a case that was later dismissed. The Housing Commission was not notified of such a hire and did not give authorization." Ms. Grossman further asserted that . . . "a new tenant commissioner, who is required to be a resident of the Windsor Housing Authority has been appointed by the Town Council to replace a commissioner whose term ended last summer. Despite the fact that the Town Council has the sole authority to appoint commissioners, his appointment is being contested by the Windsor Housing Authority because of his involvement with the petition." (Please see Exhibit # 21, 22, and Affidavit of Della Rondinone, item # 29.) More recently, . . . "there has been a substantial rent increases (sic), in access (sic) of 30%, imposed on certain residents who has chosen to speak out about these allegations, in a move that appears to be retaliatory in nature."

## LEGAL STANDARD AND ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). While granting or denying such leave is within the discretion of the district court, Reisner v. General Motors Corp., 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), leave to amend will generally be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182, . Defendants oppose Plaintiffs' motion, arguing that the proposed amendment would be futile. A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted).

Ms. Naughton, the Plaintiff, essentially seeks to add facts to parties already named, which were not available to her when she filed, her First Amended Complaint on May 17, 2021. Some of the defamatory content laden articles/publications have been taken from the Journal Inquirer and the Journal Inquirer news organizations' websites, that were written by the reporters who are named parties named in Ms. Naughton's First Amended Complaint, pertaining to their reporters. Based on these facts, plaintiff counsel had to contact persons, who still had copies of some of the articles/publications for review. These counts are specific to Courts fifteen (15) through twenty-four (24, sounding in Defamation and Counts twenty-five (25) through thirty three (33) sounding in False Light. **Attached as Exhibit # 1.**

If Plaintiff is not permitted to amend these counts, the Plaintiff is essentially deprived of an opportunity to specifically plead the counts she brought against the defendants. Additionally, if Ms. Naughton is not allowed to add facts and tailor the conduct of the reporter-defendants to the facts alleged in her First Amended Complaint, these defendants would escape liability after they committed the acts and were named in the First Amended Complaint. Plaintiff's counsel has contacted the defendants' counsels and as of this writing, Attorney Weinstein who represents the Journal Inquirer has consented to Ms. Naughton's Second Amended Complaint, **Attached as Exhibit # 1.**

## PRAYER FOR RELIEF

**FOR THE FOREGOING REASONS,** Ms. Naughton requests an Order permitting amendment of her First Amended Complaint, specific to The Windsor Journal Weekly (Hereinafter WJW), and its reporter, Anthony Zepperi, The Journal Inquirer (hereinafter JI), and its reporter, Joe Chaisson.

**FOR THE PLAINTIFF,**

BY_____/S/_____          Dated: October 27, 2021
Richard C. Gordon, Esq.,
Fed Bar No.: ct27288
40 Court Street
Windsor, CT 06095
Tele: (860) 534-0547
Email: rcgordonlaw@gmail.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URLEEN NAUGHTON**  )<br>    **Plaintiff** | **CASE NO.: 3:21-cv-402 (KAD)** |
| ) | |
| ) | **PLAINTIFF'S MOTION TO LEAVE TO FILE A**<br>**SECOND AMENDED COMPLAINT** |
| ) | |
| **ADAM GUTCHEON, et al.,**  )<br>    **Defendants.** | **October 27, 2021** |
| ) | |

**[Proposed]**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AS TO DEFENDANTS WINDSOR JOURNAL WEEKLY, ANTHOINT ZEPPARI, THE JOURNAL INQUIRER AND JOE CHAISSON.**

Based on the Plaintiff's application for leave to file a Second Amended Complaint, the Court hereby:

_____
Grant

_____
Denied

_____
Hon. Kari A. Dooley, U.S.D.J.

11

## CERTIFICATION OF SERVICE

The undersigned counsel certifies that a copy of the foregoing Motion for Leave to file a Second Amended Complaint will be served upon the defendants on or about October 27, 2021, via the Court's electronic filing system within the time proscribed by the FRCP and Local Rules to the relevant counsels of record.

FOR THE PLAINTIFF,

BY_____/S/_____          Dated: October 27, 2021
Richard C. Gordon, Esq.,
Fed Bar No.: ct27288
40 Court Street
Windsor, CT 06095
Tele: (860) 534-0547
Email: rcgordonlaw@gmail.com