UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **URLEEN NAUGHTON**<br>**Plaintiff** | ) CASE NO.: 3:21-cv-402 (KAD) |
| | ) |
| v. | ) |
| | ) September 9, 2021 |
| **ADAM GUTCHEON, et al.,**<br>**Defendants.** | ) |

### AFFIDAVIT OF Urleen Naughton

**COMES NOW**, I Urleen Naughton, having duly sworn, and say:

1. I am older than eighteen (18) years old, and I am an African American woman.

2. I have personal knowledge about the subject matter of this affidavit, and I am aware of the obligations of an oath.

3. I have been a resident of the Town of Windsor for the past twenty (20) years.

4. I have worked in housing for the past thirty (30) years and my experience as a housing professional is varied and numerous, including but is not limited to training in all aspects of housing, housing laws, regulations, and financing as they pertain to the Housing and Urban Development (hereinafter, HUD) and the Connecticut Housing and Financial Authority (hereinafter, CHFA). I have a masters degree and I speak French fluently.

5. For the past twenty-five (25) years, I have sat as a housing hearing officer adjudicating cases involving housing issues.

6. I was hired on a part-time basis as the Executive Director for the Windsor Housing Authority on July 30, 2018, by the WHA Board of Commission, which comprised Besty Kenneson-chairman, (Caucasian), Della Rondinone vice-chairman (Caucasian), and Robert Mack-treasurer (African American). Mr. Randy McKenney (African American) was appointed to the Board in or around October 2018, and he was elected chairman of the board in January 2019, to January 2021, when he resigned.

7. The WHA can best be described as a private landlord, although it is designated a "non-profit tax-exempt quasi-public corporation." The WHA is designated "quasi-public," because it accepts Section-8 funds from HUD, which comprise 12 % of the organization's total gross income. Fitch Court Apartments for example is owned by a private LLC, and the executive director of the WHA is its president.

8. When I was hired, I was placed on a 90-day probationary period, where I was expected to accomplish certain goals. These assigned goals were all accomplished in a timely manner.

9. During the January 2019 board meeting I attempted to make a point and Besty Kenneson the chairman instructed that "you are not supposed to be speaking." To which Randy McKenney chimed in and stated, "she has every right to speak, she is the Executive Director."

10. During my tenure as Executive Director of the WHA, I made the housing authority financially stable, and I met all goals were met. On May 1, 2019, The Board of Directors which consisted of Randy McKenney (chair) Della Rondinone (vice chair) and Robert Mack (treasurer), congratulated me for accomplishing all the goals previously required as part of the 90-day probationary period set from the hire date of August 20, 2018.

11. Due to my accomplishments at the WHA, and my substantially increasing the financial position of the WHA, on August 20, 2019, the Board of Directors signed me to a five-year (5) contract and increased my salary.

12. None of the past three Executive Directors, spanning fifteen (15) years, were presented with a probationary period, hired on a part-time basis, or presented with goals to accomplish prior to being signed to a contract, except Ms. Jermika Williams (African American), but she was not presented with goals to accomplish as a condition of her permanent employment at the WHA.

13. The WHA is a tax-exempt quasi-public corporate entity (Connecticut General Statute Sec. 8-44), which is governed by the Windsor Housing Board of Commissioners (sets policy and provides oversight).

14. The WHA Board of Commissioners do not manage the WHA-I did in accordance with the by-laws of the organization. The Town of Windsor does not contribute any funds, nor does it make any in kind contributions to the WHA.

15. Additionally, the Town of Windsor, nor its governing Town Council, does not have any oversight responsibilities, or any administrative authority over the WHA. By law, the Town of Windsor merely appoints and removes members of the WHA.

16. The WHA Board of Commissioners is the sole determinant of my benefits, my paid and unpaid time off, vacation time and salary. All staff benefits, staff salaries, paid and unpaid time off and vacations are paid directly from rental income collected from WHA apartments.

17. For the twenty years I have lived in the Town of Windsor, I have never attended a Town Council meeting, I have never voiced any views publicly regarding any policies or rules as they pertain to the Town of Windsor. The most political act I have ever engaged in has been my vote.

18. I have never held myself out to the public, have I expressed any views related to any town issues, or any other similar political entity.

19. All my activities in the town of Windsor have centered around being a wife, and mother to my three children who are, and were educated in the Windsor School System.

20. Prior to being assailed in public, on Face Book, in the press, and among town's people, no one knew me, or what I did professionally.

21. Even after I was vilified in the public sphere, at no point did I seek out the press to defend myself against the various inaccuracies, fraudulent stories, and lies that were spread against me.

22. Interactions with the press and the Town of Windsor Council is within the exclusive purview of the WHA Board, and not that of the Executive Director of the WHA.

23. In and around November 2020, I learned that the tenants from Mill Brook Village had prepared a list of complaints against the WHA generally, and against me specifically.

24. All tenants at the WHA are familiar with the complaint process and therefore they have knowledge that they may submit complaints to the WHA drop box either anonymously, or by name to the WHA for resolution.

25. I later learned that this list of complaints were formulated primarily by tenants Andrew McAllister and Taariq Jamaal, with assistance from other defendants. I also learned that Adam Gutcheon was a contributor to the document.

26. In August 2021, I attended a funeral in Hartford, Connecticut, and as I walked to take my seat in the church, I heard a woman state under her breath, "someone has let out Lynn the thief."

27. I have two sons and I adopted my niece, who lives at my home in Windsor. All three of my children have received copies of published articles from local newspapers from their friends, where they have been compelled by circumstances to defend my character, my integrity, my honor, and my good name.

28. I have received calls from colleagues and friends as far away as Virginia, New York, and California, who have heard about, and seen publications asserting that I have stolen money from the WHA, among the other allegations, of elder abuse, bullying tenants, my incompetence, and my failed performance at the WHA.

29. Since my name has been dragged through the mud by the defendants, I have lost over thirty (30) pounds, lost my hair, and was placed on medication by my doctors to cope with anxiety and depression.

30. At the time the WHA defendants terminated my employment on May 10, 2021, I was still on medical leave.

31. I have lived a quiet and relatively uneventful life to this point, until these people chose to assail my character and damage my reputation.

32. I learned that the authors of the documents referred to as the "petition" first published it in or around late October 2021, to the Windsor Town Council, who in turn sent it to other town's people, and in a manner that was not intended to garner rebuttals from the WHA, or myself into the allegations contained in "the petition."

33. The first time the WHA or I learned of the document, was when it was referenced by a Town of Windsor Council member, while the WHA Chairman, Mr. McKenney made his Annual Report to the Town Council in December 2012. The Annual Report that the WHA presents to the Windsor Town Council is done as a courtesy, and is not mandated by ordinance, because the WHA is not an arm of the town.

34. During the meeting, Mr. McKenney was attacked and questioned about issues arising from the petition, that he did not know anything about, while some were not even concerns of the WHA.

35. Upon learning about the existence of the document referred to as the petition, the WHA Chairman requested a copy of the document.

36. The document was not presented to the WHA until January 12, 2021, and immediately upon receiving it, we could see that it was replete with lies and fraudulent signatures.

37. I personally know that some of the tenants who allegedly signed the petition cannot read.

38. I personally know that some of the tenants who allegedly signed the petition cannot write.

39. I personally know that some of the tenants who allegedly signed the petition cannot see.

40. It was also obvious to me, as well as members of my staff, that there were other serious irregularities with the document.

4

41. After the WHA received "the petition," on January 12, 2021, the WHA Board instructed its attorney (Claire Howard) to investigate the allegations it contained," which turned up no wrongdoing by the WHA Chairman, Mr. McKenney, the WHA or I. Attorney Howard's report was widely published to members of the Town Council, including Mayor Trinks, Councilwoman Bress, and Mr. Gutcheon. Despite the conclusions from Ms. Howard's report, none of the defendants apologized to me, or saw fit to retracted any of the harmful comments they made and published about me.

42. The Windsor Town Council sent the petition to HUD and CHFA, the Hartford, Courant, the Windsor Journal Weekly and the Journal Inquirer Newspaper, in December 2020, all before the document was sent to the WHA, despite the fact the Town Council promised WHA Chairman McKenney, while he made his presentation at the December 7, 2021, meeting to the Council that he would get a copy on short order.

43. After the Council sent copies of the document to HUD and the CHFA, the WHA was required to file a response to CHFA about the allegations in the petition by the end of December 2020. Ms. Howard was forced to request extensions from HUD and CHFA, because the Windsor Town Council did not send a copy of the petition to the WHA until January 12, 2021, even though a copy was promised on December 7, 2020, by the Town Council.

44. On May 10, 2021, I learned from the WHA's second in charge, Ms. McDougall that my employment with the WHA had been terminated. Hours later, I was served by a State Marshal of my termination, which was signed by a gentleman, named Timothy Fitzgerald, Esq., who purported to be the WHA's General Counsel of the WHA.

45. Sometime in December 2020, after the Council meeting of December 7, 2020, I stopped by Mr. Trinks' restaurant for breakfast, one morning. After placing my order, I said, "Mayor Trinks, let me introduce myself to you, I am Urleen Naughton." At that moment, "he turned red in the face and said, 'Randy said, you do really good work!'" I did not respond but turned and walked away from him after collecting my order.

46. I learned that Defendant Bress had sent copies of the "petition" to various persons in town, and members of the Windsor Town Council. Despite the fact the WHA and I were subjects of the "petition," Ms. Bress did not send a copy to me or the WHA chairman, to afford us the opportunity to defend any alleged violations.

47. At the December 7, 2020, Town Council meeting, the WHA Chairman, Randy McKenney was placed on the agenda to speak, as was the Windsor Board of Education, among other, but the issues concerning the allegations of the "petition," or its contents were not placed on the agenda, nor did Mr. McKinney aware of the document's existence.

48. During the course of Mr. McKenney's presentation, he was being questioned in very vague terms, until Councilman, Lenworth Walker stated that "there is an elephant in the room . . . ." It was at this point that the true intent behind the previous questions were revealed, so that Council members began questioning Mr. McKenney more directly about the allegations arising from the "petition."

49. Earlier around September 2020, Mr. McKenney and I were invited to meet with the Windsor Town Counsel, but at no time were we informed about the agenda. During the meeting, we were questioned extensively about the ongoing renovation project at the Millbrook Apartments.

50. I also learned that earlier in summer 2020, Defendant Gutcheon "showed up unannounced at a person who was connected with the WHA, and he questioned that person about my competence and my performance, as the Executive Director of the WHA," months before publication of the "petition" in late October 2020. I also learned that Mr. Gutcheon's unannounced appearance at this person's home occurred during the state of Connecticut's mandated shut-down, at the height of the Covid-19 Epidemic.

51. At no time was I interviewed by the Town's Human Resources or Personnel Departments regarding my being hired as the Executive Director of the WHA.

52. After I learned about the scandalous allegations contained in the petition, I called every member of the Town of Windsor Council regarding the document, but not one member returned my calls.

53. I also learned that during the heat of the petition being sent around the town, and the WHA properties, I was routinely referred to as a Nigger by tenants.

54. Due to the irresponsible conduct of some members of the town in publishing lies about me, and the WHA, my staff and I were constantly threatened with physical violence (after December 7, 2020), and were subjected to a very hostile, and violence-charged work environment. I subsequently sent letters to all council members alerting them to the threats of violence my staff and I were facing, but we received no calls, and no assurances from the Mayor or the Town council, as to our safety. In a subsequent meeting of the Council, when Councilman Walker started to read my letter into the town's record, he was promptly shut down by Mayor Trinks, Councilwoman Bress and others.

55. I believe the motive behind the defendants' conduct is that they wish to get their hands on the WHA funds for their personal enrichment. In my view, why else would they make up the awful allegations in their petition, destroy my reputation, attempt to block my access to WHA bank accounts, when I have never logged into the WHA account, once!"

56. In two short years, I cleared the deficits I inherited, reduced residents/tenant rents in many cases by less than fifty percent (50%), and recouped tens of thousands of dollars for the WHA chauffeurs.

57. The tenants have referred to me as "Bullwinkle" the black moose, "Evil Queen," and asshole. One tenant claim that I was "fucking up his home," referring to the town of Windsor.

58. I was called a "Nigger" too many times to mention.

59. In April 2021, my staff informed me that a tenant asked her, in relation to me, "what dod you do when you want to shoot an animal and you don't have a gun?" My staffer stated, she walked away from the tenant, after she heard the statement.

60. I also learned that Ms. Schumsky informed the WHA that "I was not sick," while I was away from work on sick leave.

61. On May 6, 2021, I learned that four days before I was illegally terminated, Mr. Gutcheon offered my position as Executive Director of the WHA to Ms. McDougall, my second in charge at the WHA.

62. I have learned from one of my tenants, that in December 2020, she was approached by Mr. Jamaal, who asked her to sign the petition. To which she said, "I'm not signing that shit, it's all lies."

63. Further affiant saith not.

64. I hereby certify under pains and penalties of perjury under the laws of the State of Connecticut that I have not made a false statement with respect to the information I provided in the preceding paragraphs.

65. I declare that to the best of my knowledge and belief that the information provided herein is true, accurate and complete.

_____        10.11.2021
Urleen Naughton                          Dated
Affiant

On ___11___ before me _Urleen Naughton_ personally appeared before

me _____ and proved to me on the basis of satisfactory evidence that she is the person subscribed in the within affidavit and acknowledged to me that she executed same in his authorized capacity, and who being duly sworn on her oath according to law, deposes and says that she has read the foregoing affidavit subscribed by her and that the matter stated herein, and that the information are true to the best of her knowledge, information and belief.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut, that the foregoing paragraphs are true and correct.

WITNESS my hand and official seal_____(Notary Seal)

_____
Notary/Commissioner of the Superior Court

LONNIE B BARNES
NOTARY PUBLIC
CONNECTICUT
MY COMMISSION EXPIRES 06-30-2022