UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URLEEN NAUGHTON<br>Plaintiff | ) CASE NO.: 3:21-cv-402 (KAD) |
| | ) |
| v. | ) |
| | ) September 3, 2021 |
| ADAM GUTCHEON, et al.,<br>Defendants. | ) |

**AFFIDAVIT OF Randy McKenney**

**COMES NOW**, I Randy McKenney, having duly sworn, and say:

1. I am older than eighteen (18) years old.

2. I have personal knowledge about the subject matter of this affidavit, and I am aware of the obligations of an oath.

3. For all relevant times hereto, I have been a resident of the Town of Windsor, and I served as a Town Councilman in the Town of Windsor for ten (10) years. I worked for the State of Connecticut and retired after 34 Years. At one point I was the Regional Administrator in the Eastern Region for the State of Connecticut Department of Social Services (DSS) I was also the Chairman of the Community Health Services (a community base clinic), of Hartford, and I am presently the Vice President of the Windsor Historical Society.

4. I was appointed to the Windsor Housing Board of Commissioners (the board) in or around October 2018, and I became chairman of the board on or around January 2019, approximately six (5) months after Ms. Naughton was hired as the Executive Director of the Windsor Housing Authority (WHA) in August 2018.

5. Prior to joining the board, I knew a little about housing from my time at DSS, so I knew Ms. Naughton knew a lot about housing given she was a former Housing Hearing Officer-conducted administrative hearings on housing related issues.

6. Ms. Naughton was an excellent executive director, and she was very knowledgeable, and she was a very competent executive director. In short, she was doing the job!

1

7. I learned that prior to Ms. Naughton's arrival at the WHA, the organization was in dire straits, and it was under consideration for a take over by the Department of Housing and Urban Development (HUD).

8. During Ms. Naughton's tenure, she ably secured monies for the WHA, which enabled the organization to build a substantial reserve, that did not exist before.

9. While Ms. Naughton was the Executive Director of the WHA, she required staff and organized training for board members, so we would better understand housing and housing related issues.

10. In or around January 2020, Ms. Naughton stood to speak on a WHA related issue, and the chair at the time Ms. Kenneson promptly asked her, "why do you need to speak?" To which I asked, "why shouldn't she, isn't she the executive director?"

11. When I arrived at the WHA, Ms. Naughton did not have a contract, although she was hired in August 2018, and placed on a three-month probation.

12. As best as I was able to ascertain, the WHA was rife with unprofessionalism and corruption. For example, the previous executive director, has staffers finish her basement, and a staff member was allowed to keep the WHA's riding lawn mower at his home. This latter staffer was having difficulty on the job, perpetrated violence against a fellow staffer, called Ms. Naughton a bitch, and did very little work. In short, Ms. Naughton ran the WHA by the books!

13. I learned that after Ms. Naughton's arrival at the WHA, she upgraded WHA policies in accordance with HUD guidelines, and she did this on her own time and by herself.

14. In December 2020, I presented the WHA annual report, and I was attacked by members of the Windsor Town Council, the very body I served on for ten (10) years. This attack was totally unexpected and has a distinct atmosphere of contrivance and planning about it.

15. I don't recall at the November 2020 meeting where Mr. Gutcheon stated that "Windsor is a racist town, and they sweep it under the rug like it doesn't exist." At the succeeding meeting in December, he attempted to have the comment stricken from the transcript on the basis "he was either misquoted or misunderstood."

16. More particularly, I was attacked on issues concerning health and a document termed "a petition," which the board knew absolutely nothing about, barring one member, Mr. Gutcheon. Despite the fact four of the five board members knew nothing about the petition, I was repeatedly asked to respond to the bald-face misrepresentations and fantasies represented in the petition, and why I had not responded to the allegations contained in it.

2

17. Firstly, health concerns are within the purview of the Windsor Department of Health, not the WHA; secondly, although it was apparent that member of the Council had the petition in their possession, or had seen the alleged "petition," I was unaware of it, and they did not present me with a copy prior to or during the meeting.

18. In fact, I along with the WHA, as a board were not presented a copy of the alleged "petition" until January 12, 2021, months after I believe the council had copies of the document.

19. The manner of the "assault" upon me and the WHA was a pretext to discredit the organization, the executive director, and to secure her firing.

20. The primary responsibility of the WHA Board of Commissioners is to ensure that the Executive Director did her job for the tenants, and in my opinion, she did her job very well.

21. After the document referred to as the petition was published, Ms. Naughton and the WHA were accused of elder abuse. None of these allegations were true and the untruthfulness therein were borne out by an investigation, which was conducted by Attorney-at-Law, Claire Howard. In the end, no charges were ever filed regarding the allegation of elder abuse.

22. I found it personally offensive that I would be accused of being involved with an organization that was actively engaged in elder abuse.

23. I firmly believe that the people who began the fraudulent crusade to oust Ms. Naughton holds the view that because three (3) of the members of the Board of Commissioners, Ms. Naughton, and that most of the staff (most of whom had worked at WHA for years prior to Ms. Naughton's arrival) were African Americans, we did not know what we were doing.

24. The people who began the fraudulent crusade to oust Ms. Naughton also believed or intentionally held the belief that the WHA had authority over a construction project to rehabilitate the apartments at issue, when it was the Connecticut Housing Finance Authority (CHFA) which had the sole authority, independent of the WHA.

25. In the past, some elderly members (whom were not tenants) would go to the WHA for "Renters Rebate" where the responsibility rested with the Town of Windsor's Social Services (WSS) and the Assessor's office. It is the Town of Windsor that is paid by the state of Connecticut to provide this service. The WHA under Ms. Naughton stopped this practice and directed town's people to the WSS, which made some people upset.

26. People who were not qualified for public housing would routinely call the WHA to obtain public housing, based on their connections with Town of Windsor Council people. In

these circumstances, the WHA would inform them that calling to obtain public housing was a serious breach of HUD rules.

27. Citizens of the Town of Windsor did not understand that the WHA was not a part of the Town government, and so the Town's Manager, could not direct the WHA on how to do its job.

28. In one instance, a person connected with Mr. Gutcheon called me to get someone into a WHA apartment, which I promptly declined to do. I also referred them to the website which would provide information as to when the waitlist would be open.

29. I believe the persons (Trinks, Garibay, Bress, Engleman and Joe McAuliffe) who wished to unfairly remove Ms. Naughton actively held planning meeting with Mr. Gutcheon, who would then champion the assaults upon the WHA and Ms. Naughton at the WHA meetings.

30. Lately, there has been lots of money that has poured into housing development, and Ms. Naughton, and her "operating by the book practices are deemed to be in the way." This view is especially glaring when viewed from the perspective that when the WHA was falling apart prior to Ms. Naughton's arrival, none of these people cared about the organization, or the tenants' concerns.

31. In or around January 2021, I received a call from Mayor Trinks and Councilman Mcauliff, pretending to express care about my wellbeing as chair of the WHA. On this occasion, they claimed that "it may be good for me to leave the WHA, because things were getting bad at the WHA," based on circulation of the document referred to as the petition. I believe this feigned care for my welfare, and the suggestion I resign from the WHA was designed to replace me on the WHA board with someone committed to removing Ms. Naughton as executive director of the WHA.

32. The WHA is a nonprofit organization, and it does not receive any funds from the Town of Windsor.

33. Mr. Gutcheon, Ms. Bress, Mr. McAuliffe, Mayor Trinks, and the Town Manager of Windsor all made inquiries to me prior to publication of the document referred to as the petition. In fact, most of these inquiries "were specifically directed to Ms. Naughton's competence, performance, and what was going on at the WHA?"

34. Prior to Ms. Naughton's arrival at the WHA, I learned that certain individuals were even allowed to take WHA computers for their own, when they left the organization. This practice has never occurred with any organization I had been associated with before.

35. The Windsor Journal Weekly newspaper is a member of the Windsor Chamber of Commerce, which is presently headed by Mr. Gutcheon, and formerly by Ms. Garibay.

36. In or around January 2021, Mr. Robert Mack, an active member of the WHA board wrote a letter in defense of the WHA and in support of Ms. Naughton. Many towns' people were surprised to see publication of a written rebuttal from Mr. Gutcheon to Mr. Mack's letter which was published by the paper, in the same edition, on the page opposite Mr. Mack's letter.

37. Further affiant saith not.

38. I hereby certify under pains and penalties of perjury under the laws of the State of Connecticut that I have not made a false statement with respect to the information I provided in the preceding paragraphs.

39. I declare that to the best of my knowledge and belief that the information provided herein is true, accurate and complete.


_____          _9_/_14_/_21_
Randy McKenney,                             Dated
Affiant


On __9/14/2021__ before me __Randy McKenney__ personally appeared before

me __Sharon A. Miller__ and proved to me on the basis of satisfactory evidence that he is the person subscribed in the within affidavit and acknowledged to me that he executed same in his authorized capacity, and who being duly sworn on his oath according to law, deposes and says that he has read the foregoing affidavit subscribed by him and that the matter stated herein, and that the information are true to the best of his knowledge, information and belief.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut, that the foregoing paragraphs are true and correct.        SHARON A MILLER
                                                    NOTARY PUBLIC
                                                    CONNECTICUT
                                        MY COMMISSION EXPIRES 08-31-2024

WITNESS my hand and official seal_____(Notary Seal)


_____
Notary/Commissioner of the Superior Court

5