UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URLEEN NAUGHTON,<br><br>    Plaintiff<br><br>v.<br><br>ADAM GUTCHEON, JANE GARIBAY, DONALD TRINKS, LISA BRESS, SALLY GROSSMAN, TAARIQ JAMAAL, BRIAN SMITH, CAROL ENGLEMANN, JENNIFER SCHUMSKY, ANDREW MCALLISTER, WINDSOR HOUSING AUTHORITY, WINDSOR JOURNAL WEEKLY, ANTHONY ZEPPERI, JOURAL INQUIRER, and JOE CHAISSON,<br><br>    Defendants | CASE NO. 3:21-cv-402 (KAD)<br><br><br><br><br><br><br><br><br><br><br><br>November 15, 2021 |

**REPLY IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS GROSSMAN, SMITH, AND MCALLISTER**

This action arises from the plaintiff's Amended Complaint, alleging that she was terminated from her employment as Executive Director of the Windsor Housing Authority and her reputation and good name tarnished as a result of a racially-motivated conspiracy. With respect to defendants Nancy Grossman (a community activist), Brian Smith, and Andrew McAllister (both tenants residing in housing owned by the Windsor Housing Authority), the plaintiff has named one or more of them in (at least) eight counts of violations of her rights under 42 U.S.C. §1983, seven counts of defamation, six counts of false light invasion of privacy, and counts of interference with a contractual relationship and intentional and negligent infliction of emotional distress.

Defendants Grossman, Smith, and McAllister filed their Rule 12(b)(6) motion to dismiss the plaintiff's Amended Complaint, accompanied by a memorandum of law, on June 21, 2021. (Doc. 56, 57)

On November 1, 2021, the plaintiff filed her opposition memorandum, and with it filed eight "exhibits" that the plaintiff relies upon to support her opposition. (Doc. 95, 95-1 through 95-8) On November 5, 2021, the plaintiff filed a "motion to supplement" her opposition papers with thirty-two additional "exhibits." (Doc. 104, 104-1 through 104-32) On November 10, 2021, the Court granted the plaintiff's motion to supplement, while observing that "In granting permission to file supplemental exhibits, the Court does not determine the propriety of the submission or whether the submission is properly before the Court on a motion to dismiss." (Doc. 108)

Defendants Grossman, Smith, and McAllister state herein their reply to the plaintiff's memorandum and ask the Court to dismiss all of the plaintiff's claims against them.[1]

1. *The plaintiff's forty (40) exhibits to her opposition memorandum are not properly before the Court.*

The total of forty (40) exhibits submitted by the plaintiff are not properly before the Court as a response to a Rule 12(b)(6) motion to dismiss. These exhibits are plainly not "a written instrument that is an exhibit to a pleading," pursuant to Fed.R.Civ.P. 10(c), nor is this a case in which the defendants have attempted, "on a motion under Rule 12(b)(6) . . ." to present "matters outside the pleadings" pursuant to Fed.R.Civ.P. 12(d), whereby the motion might be converted to a motion for summary judgment.

As the plaintiff herself acknowledges, under the legal standard applicable to the defendants' motion "The court's review is limited to 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference *in the pleadings* and matters of

---

[1] The defendants ask the Court to enter judgment for them on all of the claims, both those raised under federal law and those that constitute tort claims under Connecticut law. Such action is appropriate here where all of the actions that the plaintiff attributes to these three defendants are First Amendment-protected speech and petitioning the government for redress of grievances.

which judicial notice may be taken.'" (Pl.Mem. p. 30, citing *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993) (*emphasis added*)

2.   *Were the plaintiff's exhibits properly before the Court, they provide no support for her arguments in opposition.*

Were the Court to find these exhibits properly entered, they do not alter the conclusion that the plaintiff's allegations fail to make out any cognizable legal claims against defendants Grossman, Smith, and McAllister.

To the contrary, Naughton's affidavit, one of the few exhibits to even make reference to any of these three defendants, states her belief that

> [T]he motive behind the defendants' conduct is that *they wish to get their hands on the WHA funds for their personal enrichment.* In my view, why else would they make up the awful allegations in their petition, destroy my reputation, attempt to block my access to WHA bank accounts, when I have never logged into the WHA account, once!

(Doc. 95-2, Naughton Affidavit, ¶ 55, *emphasis added*) It is beyond even the heated rhetoric of the plaintiff's submissions to the Court to assert that these three defendants would, under any set of circumstances, be enabled to *"get their hands on the WHA funds"* by bringing about the plaintiff's termination.

Elsewhere in the plaintiff's exhibits, other references to these three defendants merely recite the same tired argument that they should be punished for their conduct, notwithstanding that they were engaged in protected speech or petitioning the government for redress of grievances.

3. *Plaintiff fails to show that defendants Grossman, Smith, and McAllister were part of a conspiracy with the state actors.*

The plaintiff's memorandum fails to show how her allegations support her argument that defendants Grossman, Smith, and McAllister were non-state actor participants in a conspiracy created by state actors with the power to terminate the plaintiff's employment.

While the plaintiff's memorandum is replete with references to the larger body of alleged bad actors as "the defendants," "the conspirators," and "the co-conspirators," in one of the few places where reference is made to *these* defendants, the plaintiff characterizes them as merely "'foot soldiers' from the lower rung of the defendants' team." (Pl.Mem., p. 40) Nonetheless, in this lesser capacity, the plaintiff alleges, they participated in "a carefully orchestrated segmenting of the roles that each had to play within the larger context, which was Ms. Naughton's termination." (Pl.Mem., p. 37) Missing from the plaintiff's exposition is any citation to any evidence whatsoever that these three defendants "orchestrated" their actions – circulating petitions and writing letters to the editor – with any of the state actors.

4. *There is no evidence that the three defendants were motivated by racial animus.*

The plaintiff's memorandum quite literally fails to point to *any* allegations that defendants Grossman, Smith, and McAllister were motivated by or acted on the basis of racial animus.

5. *Grossman, Smith, and McAllister were engaged in First Amendment-protected activity, therefore the claims against them are barred by Noerr-Pennington.*

The plaintiff's memorandum fails to counter defendants' position that any acts alleged against them in the Amended Complaint involved First Amendment-protected activities; specifically speech on matters of public concern (such as writing letters to local newspapers complaining about the conditions in which Windsor Housing Authority tenants were forced to

4

live) and petitioning the government for redress of grievances (literally, writing and gathering signatures for a petition complaining to the Windsor authorities of said housing conditions).

Responding to the defendants' argument that they are protected from civil liability for such First Amendment-protected conduct under the *Noerr-Pennington* doctrine, the plaintiff asserts:

> [T]he *Noerr-Pennington doctrine does not apply where petitioning activity, "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Noerr*, 365 U.S. at 144. *Pathways, Inc v. Dunne*, 172 F. Supp. 3d at 365 citing *California Motor Transport*, the Supreme Court characterized this "sham exception" as "a pattern of baseless, repetitive claims ... [that] lead[ ] the factfinder to conclude that the administrative and judicial processes have been abused." 404 U.S. 508, 513, (1972).

(Pl.Mem., p. 43) The problem, of course, is that the plaintiff has not explained what, if any, relevance this observation has here, where one thing that presumably all of the parties can agree upon is that Grossman, Smith, and McAllister were not engaged in "an attempt to interfere directly with the business relationships of a competitor." Nor is the plaintiff able to demonstrate that the defendants' invocation of their Constitutional rights is a "sham."

6. *As Executive Director of the Windsor Housing Authority, the plaintiff is a "public official" for purposes of an analysis of her claims of defamation.*

If *Noerr-Pennington* does not apply, the appropriate analysis of the plaintiff's claims of defamation depends, in the first instance on whether the plaintiff, as Executive Director of the Windsor Housing Authority, was a "public official" or "public figure." This is so because federal law has established that when an individual falls into one of these categories a claim for defamation requires an enhanced showing – that the allegedly defamatory statement was made with "actual malice." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 162-65, (1967).

On this point, the plaintiff disingenuously asserts that "Ms. Naughton is not a public figure, and she is not a public official. As the executive director of the WHA, Ms. Naughton for

5

all time before her employment was a private person who resided in the town of Windsor. She was a mere wife and mother and went about her business without injecting herself in public controversies and affairs." (Pl.Mem., p. 50) The case law does not support the plaintiff's position.

The U.S. Supreme Court states squarely that "The constitutional guarantees require, we think, a federal rule that prohibits a *public official* from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Company v. Sullivan*, 376 U.S. 254, 279-280 (1964) (*emphasis added*).

It is true, of course, that not all public employees are deemed to be "public officials" for purposes of a defamation analysis. *Hutchinson v. Proxmire*, 443 U.S. 111, n. 8 (1979). However, "the public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).

Thus, in *Sullivan, supra*, the plaintiff, "one of the three elected Commissioners of the City of Montgomery, Alabama" was a public official for purposes of a defamation analysis. 376 U.S. at 256. Case law within the District Court for Connecticut and Connecticut state courts have found various public employees to be also public officials for defamation purposes. See, e.g., *Cofrancesco v. Maturo* 3:13-cv-00977-WWE (D. Conn. 2014) (town attorney); *Holmes v. Town of E. Lyme*, 866 F. Supp. 2d 108, 130 (D. Conn. 2012) (police officer); *DeLaurentis v. City of New Haven*, 220 Conn. 225, 227 (Conn. 1991) (chairman of a municipal parking authority commission); *McIntire v. Piscottano*, No. CV 01-0076151 (Conn. 2005) (public

school teacher); *Abdelsayed v. Narumanchi*, 39 Conn. App. 778 (Conn. App. 1995) (accounting professor at state university); *Brown v. K.N.D. Corp.*, 7 Conn. App. 418, 422 (Conn. App. 1986) (assistant city manager); *Woodcock v. Journal Pub. Co., Inc.*, 230 Conn. 525, 535 (Conn. 1994) (member of a municipal planning and zoning commission); *Rice v. Meriden Housing Authority*, No. CV 03-0479556 (Conn. Super. 2004) (employee of municipal housing authority); and *Dow v. New Haven Independent, Inc.*, 41 Conn.Supp. 31, 34 (Conn. Super. 1987) (superintendent of a public school district).

These cases demonstrate that the plaintiff here, the Executive Director of the Windsor Housing Authority, as the chief officer with responsibility for administering public housing in the Town of Windsor, was a public official for purposes of her defamation claim.

7. *Any purportedly defamatory statements made by Grossman, Smith, and McAllister were not made with "actual malice" and therefore plaintiff's claims of defamation and false light invasion of privacy fail.*

The plaintiff's assertion that she has met her burden of demonstrating that allegedly defamatory statements by the defendants were made with actual malice amounts to no more than this: "Furthermore, all counts sounding in defamation of Character and false light/invasion of privacy were pleaded on the basis that all the defendants 'acted with reckless disregard for the truth, and falsities of the statements contained in the petition, and publication of the document was ordered published ("circulated") by Defendant Trinks and Bress to third parties, including HUD, CHFA, and the local newspapers.'" (Pl.Mem., p. 51) This bare assertion is the very definition of a conclusory allegation, containing no substance but merely reciting a necessary legal element of her claims.

8. *Defendants Grossman, Smith and McAllister lacked the ability to negligently inflict emotional distress on the plaintiff in the course of the termination of her employment.*

7

The plaintiff appears to concede that a claim of negligent infliction in the employment context requires a showing that the defendants engaged in "unreasonable conduct during the termination process and up Ms. Naughton's termination on May 10, 2021." (Pl.Mem., p. 54) Here, where Grossman, Smith, and McAllister were neither the employer, nor the plaintiff's superiors, nor even the plaintiff's co-workers, they had no ability to terminate the plaintiff or to effect any injuries on her "during the termination process." Therefore, Count 38 as to Grossman, Smith, and McAllister is properly dismissed.

9. *Plaintiff cannot show that the conduct she attributes to Grossman, Smith, and McAllister was "extreme and outrageous."*

The plaintiff acknowledges that to state a claim for intentional infliction of emotional distress she must be able to point to conduct that is "extreme and outrageous." (Pl.Mem., p. 56) The plaintiff's allegations against Grossman, Smith, and McAllister are that they wrote and circulated a petition and wrote letters to the editor criticizing the plaintiff's performance of her job. Even if carried out with the bad intent that the plaintiff seeks to attribute to them, these acts are simply not extreme and outrageous. Count 37 should therefore be dismissed as to these defendants.

10. *Plaintiff cannot show that Grossman, Smith, and McAllister engaged in tortious interference with her employment.*

The plaintiff recites that her claim of tortious interference requires a showing of "at least some improper motive or improper means," but cannot show either. (Pl.Mem., p. 57) As discussed above, there is no evidence that Grossman, Smith, and McAllister were motivated by racial animus, nor is it credible that these defendants sought to "get their hands on the WHA funds" as Naughton claims in her affidavit. Nor were their means improper, where they

wrote and circulated a petition and wrote letters to the editor criticizing the plaintiff's performance of her job. The Court should therefore dismiss the plaintiff's Count Thirty-Four.

*Conclusion*

The plaintiff has filed an Amended Complaint that is one hundred and four pages long, sets out thirty-eight counts, and consists of six hundred and thirty-four paragraphs. Her opposition memorandum is sixty pages in length, and she has attached to it forty additional documents. In so doing, however, the plaintiff has utterly failed to show any unlawful, defamatory, or tortious conduct by defendants Grossman, Smith, and McAllister or, alternatively, and to the extent that the Court seeks to draw every reasonable inference from the plaintiff's pleading, that conduct by the defendants that might otherwise be challenged consists of First Amendment-protected speech and conduct. Therefore, these defendants respectfully request that the Court dismiss all of the plaintiff's claims against them and enter judgment for them.

RESPECTFULLY SUBMITTED,
FOR DEFENDANTS GROSSMAN,
SMITH, AND MCALLISTER,

  / s /  *Peter Goselin ct06074*
The Law Office of Peter Goselin
557 Prospect Avenue, 2nd Floor
Hartford, Connecticut 06105
Tel. 860-580-9675
Fax 860-471-8133
pdgoselin@gmail.com

**CERTIFICATION**

I hereby certify that on November 15, 2021, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                              /s/ *Peter Goselin*