UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* :

| | |
|---|---|
| **URLEEN NAUGHTON** : | **CIVIL ACTION NO. 3:21-cv-00402-KAD** |
| : | |
| **V.** : | |
| : | |
| **ADAM GUTCHEON, ET AL** : | **NOVEMBER 15, 2021** |

**REPLY TO PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

The defendants, Windsor Journal Weekly and Anthony Zepperi (collectively, the "Defendants") submit this reply in response to the plaintiff, Urleen Naughton's (the "Plaintiff") memorandum of opposition to the Defendants' Motion to Dismiss dated October 31, 2021.

In opposing the Defendants' Motion to Dismiss, the Plaintiff makes three arguments. First, the Plaintiff argues that the Defendants made defamatory statements about Ms. Naughton which are not protected by the Fair Reporting Privilege because they (1) were not related to matters of public concern and (2) were published in bad faith. Second, the Plaintiff argues that Ms. Naughton is not a public figure and thus not required to plead actual malice. Third, the Plaintiff argues that—even if Ms. Naughton is determined to be a public official—the Defendants are liable under a civil conspiracy theory, regardless of a showing of actual malice. The Plaintiff's arguments are without merit.

The subject articles authored by Mr. Zepperi and published by the Windsor Journal Weekly regard the Windsor Housing Authority and its Executive Director. As alleged, these articles all concern matters of public interest regarding a taxpayer funded public agency and a public official. The allegation of bad faith is solely predicated upon a failure to investigate which, by itself, is insufficient to establish the malice necessary to state a plausible claim against the Defendants. Lastly, there is no claim for civil conspiracy pled nor do the allegations plausibly support such a claim.

ROGIN NASSAU LLC • ATTORNEYS AT LAW
CITYPLACE I • HARTFORD, CONNECTICUT 06103-3460 • (860) 256-6300 • JURIS NO. 050793

The Plaintiff's memorandum heavily relies on a proposed Second Amended Complaint. Specifically, the Plaintiff asserts that her proposed amendment cures the defects in her First Amended Complaint. First, the proposed Second Amended Complaint has not been allowed by this Court and cannot serve as a basis upon which the Plaintiff can oppose the instant motion.[1] Second, and contrary to the Plaintiff's bald assertion, the Second Amended Complaint does not cure the defects in the First Amended Complaint as addressed by the Motion to Dismiss. Rather, the proposed Second Amended Complaint merely adds the names of the Defendants to additional Counts without any substantive change to the underlying allegations, which are the predicate for the Plaintiff's claims.

Lastly, the Plaintiff has attached exhibits to her memorandum and filed additional exhibits in further support of her opposition to the Motion to Dismiss. The exhibits include three articles written by Mr. Zepperi and four opinion pieces by unaffiliated authors published in the Windsor Journal Weekly. These articles and letters-to-the editor are the foundation of the Plaintiff's claims against the Defendants in the First (and proposed Second) Amended Complaint. While the use of exhibits is improper to contest a Rule 12(b)(6) motion to dismiss based upon the allegations in the Complaint, should this Court elect to consider those exhibits and convert the instant motion to a motion for summary judgment, summary judgment should enter in favor of the Defendants. The opinion pieces were not altered and the articles neutrally and accurately reported matters of public concern.

---

[1] This Court has denied the Plaintiff's motion for leave to amend without prejudice for Plaintiff's failure to supply a red lined version of the proposed Second Amended Complaint. To date, the Plaintiff has not submitted a red-lined version of the proposed Second Amended Complaint nor has the Plaintiff renewed her motion for leave to file the proposed Second Amended Complaint.

- 2 -

## ARGUMENT

## POINT I

### THE FIRST AMENDED COMPAINT FAILS TO ALLEGE A PLAUSIBLE CLAIM AGAINST THE DEFENDANTS

**A. The Defendants Have Not Made Any Factual Statements About the Plaintiff**

The Plaintiff's arguments fail to make the critical distinction between the allegations made in the Petition and the statements made in reporting on the Petition and associated proceedings. The Defendants are not alleged to have ever made factual allegations about Ms. Naughton. Rather, the First (and proposed Second) Amended Complaint alleges that the Defendants reported the fact that the Petition existed and what it asserted; reported on ongoing proceedings regarding the Windsor Housing Authority as they occurred before public entities; and published op-ed pieces authored by unaffiliated co-defendants. The Plaintiff does not allege that the Defendants made any statements concurring with the allegations in the Petition. Nor does the Plaintiff allege that the Defendants misrepresented the allegations made in the Petition or the statements made during proceedings reported on, or distorted the editorials written by other parties. Indeed, there is no allegation that the Windsor Journal Weekly or Anthony Zepperi made *any* statements of fact regarding the Plaintiff.

**B. The Fair Reporting Privilege Applies**

The Plaintiff incorrectly argues that the Fair Reporting Privilege does not apply to the Defendants because the allegedly defamatory statements do not relate to matters of public concern and because the Defendants published such statements in bad faith.

*1. The Allegedly Defamatory Remarks Relate to Matters of Public Concern*

The Plaintiff argues that the articles and letters to the editor appearing in the Windsor Journal Weekly are not related to matters of public concern. This is wrong. The Plaintiff reasons that

- 3 -

defamatory statements regarding the competence, qualifications, and integrity of Ms. Naughton in her official capacities "denigrated her honesty and integrity as an individual." Such an inference does not negate the fact that any statements made about Ms. Naughton and thereafter reported on in the Windsor Journal Weekly related to Ms. Naughton's role as Executive Director of the Windsor Housing Authority and the effect such role had on "the aged, disabled, and indigent residents she served." See Plaintiff's memorandum in opposition to the Defendants' Motion to Dismiss at p. 37.

### 2. The Plaintiff Fails to Allege that the Defendants Acted in Bad Faith

The Plaintiff claims that the Defendants acted in bad faith or with malice, asserting (a) that the Defendants failed to interview additional parties to determine the truth of the statements published; (b) that the findings of a third-party's investigation into Ms. Naughton's conduct were available to the Defendants and should have caused the Defendants to doubt the truth of the statements made in the Petition and (c) that the Defendants should have drawn inferences from ancillary information and statements made at various meetings to determine that the co-defendants were ill-intentioned and dishonest. Together, these arguments merely assert a failure to adequately investigate.

"Failure to investigate by itself is not enough to prove actual malice." Dongguk University v. Yale, 873 F. Supp. 2d 460, 465 (D. Conn. 2012). See also Burton v. American Lawyer Media, Inc., 83 Conn. App. 134, 141 (Conn. App. 2004) (holding that a reporter "had no duty" to conduct an investigation before writing an article and stating that, under the fair reporting privilege, the "press has no duty to go behind statements made at official proceedings to determine accuracy before releasing them"). Rather, a claim of bad faith must be based on facts that demonstrate a "reckless disregard of the truth or falsity of facts." Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 618 (1955). To properly plead bad faith or an abuse of privilege, the Plaintiff must allege facts

- 4 -

demonstrating, at the very least, that the Defendants knew "that the words [we]re false or inherently improbable, or there [we]re *obvious* reasons to doubt the veracity of the person quoted or the accuracy of his reports." Goldwater v. Ginzburg, 414 F.2d 324, 337 (2d Cir. 1969) (emphasis added). "The immunity of privilege is lost if the defendants can be shown to have made the claimed defamatory utterances for a purpose other than that for which the immunity was designed to afford protection." Charles Parker Co., 142 Conn. 605, at 617. There are no such allegations in the operative Complaint.

Importantly, the Complaint never alleges how the Defendants knew or should have known of falsities, or even questioned the validity of the allegations made in the Petition. The Complaint does not allege that the Defendants had actual knowledge of the information or had access to the investigation findings that the Plaintiff now asserts should have given rise to serious doubts about the veracity of the allegations against Ms. Naughton. Further, there are no facts that could support a showing of bad motives, ill will, or any purpose other than the Defendants performing the wholly legitimate function as a newspaper of publishing articles about matters of public concern. Put simply, there are no allegations of fact from which to plausibly infer bad faith on the part of the Defendants.

### C. The Plaintiff Is a Public Figure and Public Official

If the plaintiff is a public official or public figure suing a media defendant, the First Amendment requires actual malice. New York Times v. Sullivan, 376 U.S. 254, 279-280 (1964) (public officials); Curtis Publishing Co. v. Butts, 388 U.S. 130, 155 (1967) (public figures). Whether a person is a public official or a public figure is a question of law for the court. Rosenblatt v. Baer, 383 U.S. 75, 88 (1966); Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 172 (2000) (citing Marcone v. Penthouse Int'l Magazine for Men. 754 F.2d 1072, 1081 n.4 (3d Cir. 1985)); West v. Media General Operations, Inc. 2001 WL 34079475 at *3 (E.D. Tennessee 2001) (citations omitted).

ROGIN NASSAU LLC • ATTORNEYS AT LAW
CITYPLACE I • HARTFORD, CONNECTICUT 06103-3460 • (860) 256-6300 • JURIS NO. 050793

The Plaintiff maintains that "Ms. Naughton is not a public figure, and she is not a public official," and is thus not required to plead actual malice to bring claims of defamation. The Plaintiff misinterprets the meaning of a public official and public figure for purposes of a defamation claim.

Courts have defined "public figure" as someone who may have "accepted public office," "assumed an influential role in ordering society," or "occupied a role of especial prominence in the affairs of society." Jensen v. Times Mirror Co., 634 F. Supp. 304, 311 (D. Conn. 1986). Contrary to Plaintiff's assertions, it is not required that an individual thrust herself into a public controversy or publicly comment on such a controversy to be considered a public figure. Whether an individual is a public figure for purposes of a defamation action is to be determined as of the time of the allegedly defamatory publications. Id. at 312. Here, the Complaint alleges that the Plaintiff served as Executive Director of the Windsor Housing Authority ("WHA"). The Complaint further defines the WHA as a "tax-exempt non-profit quasi-public entity . . . governed by the Windsor Housing Board of Commissioners," created by "a Cooperative Agreement between the Town of Windsor and the Connecticut Department of Housing" with the purpose of "provid[ing] safe and affordable housing to low income, elderly and disabled residents of the Town of Windsor." Complaint ¶¶ 14, 21–22. Plaintiff is alleged to have been the Executive Director of the WHA, "making her the chief operating officer of the organization charged with its day-to-day management." Complaint, First Count, ¶ 5. Plaintiff clearly occupied a role of influence and prominence in the Town of Windsor.

The United States Supreme Court explained that a "public official" is one who is "in a position to influence the resolution of [public] issues…who has, or appears to the public to have, substantial responsibility for or control over the conduct of government affairs…[such] that the public has an independent interest in the qualifications and performance of that person…beyond the general public

interest in the qualifications or performance of all government employees." Rosenblatt v. Baer, 383 U.S. at 85-86. The Complaint alleges that the members of the WHA Board of Commissioners (the "WBC") are recommended for appointment by the Town of Windsor's Personnel Committee, led by a member of the Windsor Town Council, and that appointments to the WBC are made by the Mayor of Windsor. Complaint, First Count, ¶ 14. The Plaintiff is alleged to have "taken the WHA from a deficit to a surplus and has overseen the modernization of many WHA practices and procedures. Complaint, First Count, ¶ 26. Additionally, the Plaintiff asserts in her opposition memorandum that the WHA accepts federal funding from the U.S. Department of Housing and Urban Development "Section-8" Rental Assistance Program. The Plaintiff is clearly a public official as she occupied a position of public trust with substantial responsibility for the financial management of a taxpayer funded public entity accountable to public officials elected by the residents of the Town of Windsor and responsible for the well-being of vulnerable members of the general public residing in Windsor. As demonstrated by the very Petition, government proceedings, letters-to-the-editor, and newspaper articles cited in the Complaint, there was an intense public interest in the Plaintiff's performance.

Moreover, the Connecticut Supreme Court has held that any person in a position that, "if abused, has great potential for social harm and thus invites independent interest in the qualifications and performance of the person who holds the position" may be categorized as a public official. Moriarty v. Lippe, 162 Conn. 371, 378 (1972).[2] The Petition cited in the Complaint clearly demonstrates how such a position, if abused, can cause social harm. Other courts have specifically held that an executive director of a housing authority is a public official for purposes of a defamation

---

[2] The Connecticut Constitution protects more speech than does the First Amendment of the Federal Constitution. Brown v. Office of the Controller, 456 F. Supp. 3d 370. (D. Conn. 2020)(Underhill, C.J.) (citing Trusz v. UBS Realty Investors, LLC, 319 Conn. 175, 192-93 (2015)).

action. See Worrell-Payne v. Gannett Co., Inc., 134 F. Supp.2d 1167, 1171-1172 (D. Idaho 2000), aff'd, 46 Fed.Apx. 105 (9th Cir, 2002) (citing Rosenblatt v. Baer, 383 U.S. 75, 85-86 and n. 13 (1966)). Ms. Naughton is, as a matter of law, is a public official, and therefore required to plead actual malice.

### D. The Plaintiff Fails to Allege Civil Conspiracy

The Plaintiff argues that—even if Ms. Naughton is determined to be a public official—the Defendants are liable under a civil conspiracy theory, regardless of a showing of actual malice, because they acted in concert with co-defendants Garibay, Trinks and Bress. However, the Plaintiff has failed to plead civil conspiracy as to Windsor Journal Weekly or Anthony Zepperi. Indeed, not one of the thirty-seven counts in the Complaint alleges civil conspiracy as to the Defendants.

"The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Harp v. King, 266 Conn. 747, 779 (2003). "[T]he purpose of a civil conspiracy claim is to impose civil liability for damages on those who agree to join in a tortfeasor's conduct and, thereby, become liable for the ensuing damage, simply by virtue of their agreement to engage in the wrongdoing." Macomber v. Travelers Property & Casualty Corp., 277 Conn. 617, 636 (2006). As such, the "essence of a civil conspiracy [is] two or more persons acting together to achieve a shared goal," where "each party acted with 'the same [tortious] intent, and ... had substantially the same knowledge of the [tortious] means and purposes as the other participants." Fischer v. Ulysses Partners, LLC, 2016 WL 8669889 (Conn. Super. Ct. Nov. 8, 2016) (quoting Harp v. King, 266 Conn. 747, 779 (2003) and Williams v. Maislen, 116 Conn. 433, 437–38 (1933)).

- 8 -

The Plaintiff has not alleged that the Defendants shared any such conspiratorial intent or even had knowledge of such a conspiracy. Rather, the Complaint alleges that the Defendants reported on the Petition *after* the allegedly defamatory statements in the Petition had already been published and presented to the Windsor Town Council, as well as the Connecticut Housing Finance Authority and Federal Department of Housing and Urban Development. Simply publishing information does not constitute involvement in such a conspiracy without further intent or knowledge.

Moreover, civil conspiracy is not an independent cause of action. Here, there is no viable underlying substantive claim. The Plaintiff cannot use bare accusations of conspiracy to cure a failure to adequately plead her claims as to Windsor Journal Weekly and Anthony Zepperi. Even if the Plaintiff could meet the elements of civil conspiracy, which she cannot, the defamation and invasion of privacy by false light claims fail as to all defendants. See Docket Nos. 56–59 (reasoning that Plaintiff's claims of defamation or false light as to defendants Lisa Bress and Donald Trinks are barred by the doctrine of absolute immunity, such claims as to defendant Jane Garibay are barred by the Eleventh Amendment, and all such claims otherwise fail as to all defendants for failure to adequately plead such claims). Accordingly, the Plaintiff does not have a viable cause of action upon which to base a civil conspiracy claim for defamation or false light claims asserted elsewhere in the Complaint.

## POINT II

## THE PROPOSED SECOND AMENDED COMPLAINT DOES NOT STATE A PLAUSIBLE CAUSE OF ACTION AGAINT THE DEFENDANTS

Although permission for leave to file the proposed Second Amended Complaint has not been granted, because the Plaintiff relies on the proposed Second Amended Complaint in advancing her opposition to the instant motions, the Defendants will address those arguments now.[3]

As set forth in the Defendants' Motion to Dismiss dated July 30, 2021, the motion and supporting arguments, all of which are incorporated as if fully set forth herein (Docket Entry Nos. 71 and 72), the Plaintiff's purported defamation and false light claims against the Defendants fail to state a plausible claim for relief and are barred as a matter of law by the Fair Reporting Privilege. The Plaintiff's proposed Second Amended Complaint fails to allege *any* facts to address the deficiencies and cannot withstand the pending motion to dismiss. Accordingly, the Defendants will oppose the Plaintiff's motion for leave to amend the Complaint as futile should that motion be renewed.[4]

Plaintiff's Motion for Leave to File a Second Amended Complaint identifies articles Plaintiff alleges are the basis for her purported defamation and false light claims against the Defendants, but the proposed Second Amended Complaint does not incorporate those allegations or any new factual allegations. Instead, Plaintiff's proposed Second Amended Complaint names the Defendants in

---

[3] Defendants concede that deciphering Plaintiff's near 100 page, 38-count, 633 paragraph second Amended Complaint, especially in the absence of a red lined version, has been challenging.

[4] Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that in the absence of consent by the opposing party, a party may only amend its pleading with leave of court. The court should freely give leave when justice so requires." "Although Fed. R. Civ. P. 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." Hunt v. Alliance N. Am. Gov't Income Trust, Inc., 159 F.3d 723, 728 (2d Cir. 1998). See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).").

- 10 -

additional counts purporting to allege claims of defamation and false light without addressing any of the deficiencies in the prior pleading. Specifically, Plaintiff seeks to include Windsor Journal Weekly in Counts Seventeen and Twenty-One, alleging claims of defamation, as well as Counts Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Nine and Thirty-One, alleging claims of invasion of privacy by false light. Plaintiff now also seeks to include Anthony Zepperi as a named defendant in Counts Eighteen, Twenty-One, Twenty-Two and Twenty-Three, alleging claims of defamation, as well as Counts Twenty-Nine and Thirty-One, alleging claims of invasion of privacy by false light.

As a public official, Plaintiff is required to plead actual malice to maintain a defamation claim or a claim of invasion of privacy by false light. A "failure to investigate, without more, cannot establish reckless disregard for the truth" or actual malice. Gertz v. Robert Welch, Inc., 418 U.S. 323, 330 (1974). "Rather, the publisher must act with a 'high degree of awareness of probably falsity." Id. The plaintiff "must demonstrate a purposeful avoidance of the truth." Hopkins v. O'Connor, 282 Conn. 821, 846, 925 (2007). Just as all claims made against the Defendants in Plaintiff's First Amended Complaint, each of the additional counts naming the Defendants in the proposed Second Amended Complaint fails to allege *any* facts supporting a claim that the Defendants purposefully disregarded the truth or acted with actual malice. Rather, the proposed Second Amended Complaint merely recites conclusory allegations and purports to outline the elements of the causes of action. The proposed Second Amended Complaint fails to make any factual allegations from which to plausibly infer that the Defendants had any doubt as to the truth of the statements made in the Petition.

Moreover, even if the Plaintiff is permitted to amend her complaint as proposed, Plaintiff's claims are barred by the Fair Reporting Privilege and the Defendants' Motion to Dismiss should still be granted. In each of the counts against the Defendants, the Plaintiff alleges that the Defendants

- 11 -

"published information from 'the petition' which were false statements." See Proposed Second Amended Complaint, Counts Seventeen through Thirty-One. "Even when there is a defamatory statement, the publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." Burton v. Am. Lawyer Media, Inc., 83 Conn. App. 134, 137–38 (2004). The determination of whether the contents of a newspaper article are privileged as fair reporting is an issue of law, and the "accuracy required is to the proceedings, not to the objective truth of the defamatory charges," Id. at 138, 140. See also Edwards v. National Audubon Soc., Inc., 556 F.2d 113 (2d Cir. 1977) ("We do not believe that the press may be required under the First Amendment to suppress newsworthy statements merely because it has serious doubts regarding their truth. Nor must the press take up cudgels against dubious charges in order to publish them without fear of liability for defamation.")

The Plaintiff has not alleged that any of the subject articles inaccurately represented the Petition or that any of the letters or editorials were altered or distorted by the Defendants. Rather, each of the Plaintiff's claims against the Windsor Journal Weekly and Anthony Zepperi arise from the neutral reporting of information from and about the Petition, which addressed a matter of public concern related to the official actions of the Windsor Housing Authority, a public entity managed by the Plaintiff, a public official. The Plaintiff's proposed amendments to the complaint do not allege *any* additional facts that would suggest the Defendants are not protected by the Fair Reporting Privilege. As such, the proposed Second Amended Complaint would not survive a motion to dismiss.

## POINT III

## THE EXTRINSIC INFORMATION SUBMITTED IN PLAINTIFF'S OPPOSITION MEMORANDUM IS NOT APPROPRIATE FOR A MOTION TO DISMISS

Plaintiff's reliance on extrinsic evidence is improper. On a motion to dismiss under Rule 12(b)(6), only the facts alleged in the complaint, documents attached to the complaint, or documents incorporated by reference are considered. In the Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, the Plaintiff cites to and attaches seven written affidavits as evidence purporting to support Plaintiff's arguments. The Plaintiff now seeks to also include thirty-one exhibits—many of which are referenced in the Plaintiff's opposition memorandum—by way of motion dated November 5, 2021, reasoning that the documents are critical to Plaintiff's opposition to the defendants' motion to dismiss. Fed. R. Civ. P. 12(d) provides that if, on a motion to dismiss under Rule 12(b)(6), "matters outside the pleadings are presented to *and not excluded* by the court, the motion must be treated as one for summary judgment under Rule 56." (emphasis added).

As a matter of law, neither these exhibits nor the affidavits should be considered in deciding on the Defendants' Rule 12(b)(6) Motion to Dismiss, as these extraneous documents are not included in the pleadings. See Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (holding that "when a party seeks to introduce affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion," and the court chooses to consider such extraneous material, it is "now mandatory" that the motion "be translated into a Rule 56 motion") (citing Carter v. Stanton, 405 U.S. 669, 671, 92 (1972) (per curiam)). "Thus, if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016) (identifying a document as integral where the

complaint "relies heavily upon its terms and effect" and noting that even where a document is integral to the complaint, there must be no dispute as to the authenticity, accuracy, or relevance of the document). To the extent this Court elects to consider the affidavits and exhibits submitted by the Plaintiff which are outside of the factual allegations in the First Amended Complaint, the Motion to Dismiss should be treated as a motion for summary judgment and granted in favor of the Defendants.

Fed. R. Civ. P. 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view all inferences and ambiguities "in a light most favorable to the nonmoving party." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). A cursory review of the subject newspaper articles written by Mr. Zepperi and published by the Windsor Journal Weekly and cited as exhibits by the Plaintiff in support of her opposition to the Motion to Dismiss, requires the entry of summary judgment for the Defendants.

Among the Plaintiff's proposed exhibits are a document which the Plaintiff refers to as the Petition (Exhibit 3) and portions of several articles and letters-to-the-editor published in various newspapers (Exhibit 11).[5] The Plaintiff's memorandum in opposition to the instant motion identifies three news articles written by Anthony Zepperi and four letters to the editor of the Windsor Journal Weekly, which the Plaintiff asserts support the claims against the Defendants in the Complaint.

---

[5] Plaintiff's proposed Exhibit 11, which includes news articles and letters to the editor, is divided into subparts (a) through (s). According to the Plaintiff's "Table of Contents," the articles and letters in subparts (a)–(c), (f)–(h) and (r)–(s) were published in the Windsor Journal Weekly. Of these articles and letters, only (f)–(h) are articles written by defendant Anthony Zepperi.

More specifically, the Plaintiff's Exhibit 11(f), "Chair of W.H.A. Board of Commissioners Resigns. Member Calls for 'Good Faith Investigation'" is a news article by Anthony Zepperi that was published in the January 22, 2021 issue of the Windsor Journal Weekly. This article reports that "a group of more than 50 residents signed a petition to the town council complaining of issues related to the renovation project and the general treatment they were receiving from Windsor Housing Authority Executive Director Urleen Naughton and her staff," and recounts the substance of some of the allegations made in the Petition. Plaintiff's Exhibit 11(h), "W.H.A. Tenants Ask for Safety and Respect" by Anthony Zepperi—published in the January 29, 2021 issue of the Windsor Journal—reports that "roughly 25 people" held a protest "to voice their dissatisfaction with the town's Housing Authority" and neutrally summarizes some of the allegations included in the Petition. The article then provides quotes from individuals who attended the protest. Plaintiff's Exhibit 11(g), "WHA Commission Has New Chair, Lawsuit Filed," by Anthony Zepperi, appears in the March 26, 2021 issue. This article merely reports that a member of Congress had gotten involved with the issues complained of in the Petition and recounts developments in the structuring of the related entities.

These articles self-evidently show that there is simply no basis for the Plaintiff's claims. Each of the articles written by Anthony Zepperi and published by the Windsor Journal Weekly neutrally report the Petition and surrounding events without taking a position as to the allegations made in the Petition. Further, the subject newspaper articles accurately represent what is alleged in the Petition.

The Plaintiff further attaches and cites four letters-to-the-editor of the Windsor Journal Weekly as supportive of her claims against the Windsor Journal Weekly: (1) "There Is A Problem In Housing Authority" by Adam Gutcheon, marked as Exhibit 11(a); (2) "It's Time For Action – Not Words" by Adam Gutcheon, marked as Exhibit 11(b); (3) an untitled "Letter to the Editor" by Sally

Grossman, which appears in the February 26, 2021 issue of the Windsor Journal, marked as Exhibit 11(r) and duplicated as Exhibit 2; and (4) an email dated March 19, 2021, which purports to include a copy of a letter written by Brian Smith to the Windsor Journal, marked as Exhibit 11(s). In Exhibit 11(a), Mr. Gutcheon explains his role as a Commissioner of the Housing Authority of the Town of Windsor and his opinions as to the duties and failures of the Board of Commissioners in response to "a petition detailing serious and disturbing allegations against the Housing Authority, certain employees, and members of the Board." Mr. Gutcheon then responds, in Exhibit 11(b), to a letter to the editor written by Robert Mack—which was published in the same issue of the Windsor Journal Weekly and is marked as Exhibit 11(c). Here, Mr. Gutcheon expresses opinions about Mr. Mack's letter and details his own personal experiences with and ideas about the Town of Windsor and the WHA. In Exhibit 11(r), Ms. Grossman expresses her opinions as a member of the community, discusses allegations made in the Petition, expresses her opinions about such allegations and about Ms. Naughton, and calls for further investigation of allegations against the WHA. In Exhibit 11(s), Mr. Smith recounts his own personal experiences as a resident of a housing community run by the WHA and expresses his own opinions and feelings about these experiences.

The Plaintiff does not allege that any of these letters are statements of fact made by either Mr. Zepperi or the Windsor Journal Weekly. As a matter of fact, these letters do not constitute statements made by Mr. Zepperi or the Windsor Journal Weekly. Rather, these letters reflect only the opinions of unaffiliated authors regarding matters of public concern. Merely printing opinion-editorial letters written by third parties does not equate to publishing defamatory remarks as fact. None of the exhibits submitted by the Plaintiff include any evidence that the Defendants acted in bad faith, and there is no

- 16 -

genuine issue of fact that affects the Defendants' protection under the Fair Reporting Privilege. If converted to a motion for summary judgment, judgment should be granted for the Defendants.

## CONCLUSION

Based upon the foregoing and interest of a robust First Amendment, the Defendants respectfully request that Defendants' Motion to Dismiss be granted with prejudice. Alternatively, the Defendant further requests that if the instant motion is converted to a motion for summary judgment, that summary judgment be entered in favor the Defendants and against the Plaintiff.

THE DEFENDANTS,
WINDSOR JOURNAL WEEKLY
AND ANTHONY ZEPPERI

By: /s/ George C. Springer, Jr.
George C. Springer, Jr. [ct03263]
Rogin Nassau LLC
185 Asylum Street, 22nd Floor
Hartford, CT 06103-3460
Tel: (860) 256-6380
Fax: (860) 278-2179
E-mail: gspringer@roginlaw.com

## CERTIFICATION

This is to certify that a copy of the foregoing was served electronically this 15th day of November 2021 and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail at the addresses shown below to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Richard C. Gordon, Esq.
Law Office, Richard C. Gordon
40 Court Street
Windsor, CT 06095
Email: RCGordonlaw@Gmail.com

Beverly Knapp Anderson, Esq.
William D. Catalina
Neubert, Pepe & Monteith, P.C.
750 Main Street
Suite 200
Hartford, CT 06103
Email: bknapp@npmlaw.com
Email: wcatalina@npmlaw.com

Philip Miller, Esq.
Attorney General's Office
55 Elm St., PO Box 120
Hartford, CT 06141-0120
Email: phil.miller@ct.gov

David S. Monastersky, Esq.
Howd & Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114-1190
Email: dmonastersky@hl-law.com

Peter D. Goselin, Esq.
The Law Office of Peter Goselin
557 Prospect Ave., 2nd Floor
Hartford, CT 06105
Email: pdgoselin@gmail.com

Richard P. Weinstein, Esq.
Weinstein & Wisser, P.C.
29 S. Main St.
Suite 207
West Hartford, CT 06107
Email: rpw@weinsteinwisser.com

/s/ George C. Springer, Jr.
George C. Springer, Jr. [ct03263]