## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Urleen Naughton | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Civil No. 3:21-CV-00402-KAD |
| | : | |
| Adam Gutcheon, et al | : | |
| | : | |
| Defendants | : | |
| | : | DECEMBER 6, 2021 |
| | : | |

### DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION (NO. 93) TO MOTION TO DISMISS

The Defendants, **Adam Gutcheon, Taariq Jaamal, Windsor Housing Authority,**

**Carol Englemann** and **Jennifer Schumsky**, by and through their undersigned counsel, submit

this Reply to Plaintiff's Opposition to Motion to Dismiss.  See ECF No. 93.[1]  Several general

issues with Plaintiff's Opposition are briefly addressed in sections 1 through 5 below, followed

by sections 6 through 12, which address the material arguments[2] raised by Plaintiff in response

to the Motion to Dismiss.  Plaintiff's Opposition has failed to demonstrate valid causes of action

against each of the undersigned defendants based on non-conclusory facts.  Accordingly, the

Motion to Dismiss should be granted as to each of the undersigned defendants.

---

[1] Although the title of the Plaintiff's Opposition Memorandum (ECF No. 93) and introductory paragraph states that it is in response to different defendants, it is believed that this Memorandum is submitted in response to the undersigned defendants' Motion to Dismiss based on the statement in the case caption itself.

[2] Notably, the Plaintiff's voluminous, prolific, and improper filings raise a litany of irrelevant or immaterial facts or arguments that are not addressed because they do not relate directly to the facts and law raised in the Motion to Dismiss, or they are so meritless or unsupported by proper factual allegations that they should not affect the outcome of the Motion to Dismiss. The Court should not construe the defendant's non-response to a particular point to be a concession of either its merit or impact on the Motion to Dismiss.

1. **Plaintiff's Submissions and Arguments of Fact Beyond the Complaint Should Not Be Considered on the Motion to Dismiss.**

   A. *Plaintiff's Submissions and Arguments Outside the Pleadings are Improper on a Motion to Dismiss Pursuant to Rule 12(b)(6).*

.

The Present Motion to Dismiss was filed pursuant to Rule 12(b)(6), and in deciding the

Motion, the Court thus "is generally limited to the facts as presented within the four corners of

the complaint, to documents attached to the complaint, or to documents incorporated within the

complaint by reference." *Williams v. Time Warner Inc.*, 440 Fed. Appx. 7, 9 (2d Cir. 2011). In

filing their Motions to Dismiss, no defendant submitted or relied on facts outside the pleadings,

and it is improper for the Plaintiff to do so in her opposition. This Court should not rely on facts

and arguments of facts outside the Complaint in deciding the Motion to Dismiss.

   B. *To The Extent That This Court Entertains Consideration of Facts Outside the Pleadings, the Plaintiff's Submissions Should Not Be Considered as They Do Not Meet the Standard Required for Affidavits and Other Admissible Evidence.*

To the extent that the Court is inclined to consider facts outside the Complaint in

determining the Motion to Dismiss, submissions that do not constitute admissible evidence under

the standard for a motion for summary judgment properly cannot be considered. See *Credle-*

*Brown v. State Dep't of Children & Families*, 2009 U.S. Dist. LEXIS 33561, *12-13 (D. Conn.

Apr. 21, 2009) (court may only review admissible evidence on a motion for summary judgment).

The Court cannot rely on evidence that is conclusory or hearsay. See *J.S. ex rel. N.S. v.

Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Any "supporting and opposing affidavits

shall be made on personal knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

therein. This requirement means that hearsay testimony . . . that would not be admissible if

testified to at the trial may not properly be set forth in . . . [an] affidavit." (Internal quotation

marks omitted.) *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986).  The standard requires that "[a]ll evidence must be properly authenticated." *Pommer v. Vaughn*, 2009 U.S. Dist. LEXIS 44534 (D. Conn. May 27, 2009).

In the present case, Plaintiff submitted voluminous filings that include documents that are not properly authenticated, such as meeting minutes, letters, correspondence, and seemingly screenshots of partial text messages to and from unknown people.  These and other submissions reference information that also is inadmissible as hearsay, speculation, or lacking any evidentiary foundation.  Additionally, the Affidavits repeatedly include statements that are prefaced by "I believe" or "I learned," which are catch-phrases highlighting that the affiant has no personal knowledge and is either speculating, making a statement that is not based on personal knowledge, or referencing hearsay.  A "supporting or opposing affidavit must be made on personal knowledge . . . .  The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" (Citations omitted; internal quotation marks omitted.) *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009); citing *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004).

Thus, even if the Court were inclined to potentially consider Plaintiff's submissions beyond her Complaint, the Court would encounter largely documents that properly cannot be considered because they do not constitute admissible evidence.

**2. Plaintiff's Generic References to "The Defendants" are Inadequate to Support Her Causes of Action, Particularly Her Civil Rights Causes of Action That Require Elements of Intentional Discrimination and Actual Knowledge of Intentional Racial Discrimination.**

Although she has alleged claims against 15 separate defendants from news outlets to low-income, disabled, or elderly affordable housing tenants, Plaintiff casually and repeatedly uses the generic term "the defendants" or similar language in her memoranda in opposition to the

undersigned's Motion to Dismiss.  For example, Plaintiff makes such statements as "The

defendants had a responsibility to train the defendants on issues involving equal protection . . . ."

ECF No. 94, p. 68.  She uses the generic "the defendants" notwithstanding the fact that there is

no question that her federal civil rights claims require that she plead facts of intentional racial

animus, or, as to some claims, actual knowledge of racial animus on the part of a named

defendant.  Thus, to the extent that the Complaint, or the arguments in Plaintiff's memorandum

of law, refer to actions or conduct by "the defendants" without factual allegations demonstrating

precisely to whom Plaintiff is referring, they properly cannot be considered.

**3.      Plaintiff's References to Third Persons (Including Some That Are Unidentified) Do Not Support Plaintiff's Cause of Action Against the Undersigned Defendants.**

Compounding the problematic generic references to "the defendants" in this case,

plaintiff's memoranda of law and some of Plaintiff's other submissions reference conduct and

statements by wholly unidentified persons or third parties.  Particularly notable in this regard is

that the Plaintiff repeatedly references racial epitaphs by unidentified people that are seemingly

not parties in this case.  Importantly, Plaintiff does not state in her Complaint (or in any

submissions) that those statements were made by any named defendant and/or that the people

purportedly making such statements have any formal association with any of the 15 named

defendants.  Plaintiff has failed to identify by whom, to whom, when, or where these racially

derogatory comments were made.  She has not alleged they were made by the undersigned

defendants, and, thus, they should not be considered at all in assessing the Motion to Dismiss.

**4.      Plaintiff Does Not Include Facts as to Englemann or Schumsky That Would Support Any Claims Against Them, and, Therefore, All Claims Against Them Should Be Dismissed Without Delay.**

In her Opposition Memorandum, Plaintiff barely discusses the alleged conduct of Carol

Englemann and Jennifer Schumsky, let alone explain how those defendants in particular would

be liable under any cause of action alleged against them.  Accordingly, all causes of action against them should be dismissed without delay as Plaintiff has not alleged nor made any legitimate argument that legally valid claims have been alleged against those two defendants in their individual capacity as non-state actors.

5. **Plaintiff's Failure to Address Points of the Undersigned Defendants' Motion to Dismiss Results in Plaintiff Being Deemed to Have Abandoned Opposition to Those Claims.**

The Plaintiff's opposition memorandum largely fails to address the legal sufficiency of her Complaint's allegations as to each of the undersigned named defendants.  Although providing prolific and voluminous filings to the Court, Plaintiff's opposition and additional submissions set forth many irrelevant and immaterial facts.  Plaintiff fails to make discernable legal arguments regarding each of the individual undersigned defendants, and how the allegations against them in the Complaint state viable causes of action based on applicable legal authority.  In fact, instead of explaining how the Complaint's allegations state each cause of action, Plaintiff instead submitted a series of submissions that are unauthenticated, not based on personal knowledge, irrelevant, filled with conclusory allegations, contain speculation and hearsay, and are simply not proper for submission upon a Motion to Dismiss pursuant to Rule 12(b)(6).  By failing to explain how her Complaint's actual allegations state a valid cause of action against each of the undersigned defendants, Plaintiff has abandoned her opposition to the motion to dismiss those claims. See *Williams v. Suffolk City*, 284 F. Supp. 3d 275, 284 (E.D.N.Y. 2018) (claim abandoned where Plaintiff did not address defendant's arguments for judgment on claim).

Accordingly, each of the claims should be dismissed against the undersigned Defendants as Plaintiff failed to adequately address the Motion to Dismiss and its submission that *Plaintiff's Complaint* failed to state valid causes of action against the undersigned defendants.

**6. The "Sham Exception" to the First Amendment Protections of Noerr-Pennington Immunity Does Not Apply to Plaintiff's Claims.**

As set forth in the undersigned Defendants' Motion to Dismiss, the Plaintiff's allegations against them do not state a cause of action because they are barred by the First Amendment protections of Noerr-Pennington immunity.  In response, Plaintiff argues that the "sham" exception to immunity applies.  However, Plaintiff has not alleged in her Complaint facts that would substantiate the "sham" exception.  In fact, because Plaintiff apparently misapprehends the applicable law, Plaintiff's statements throughout her opposition affirmatively demonstrate that the "sham" exception to immunity does *not* apply to this case.  Accordingly, all of Plaintiff's causes of action against the undersigned defendants should be dismissed based on Noerr-Pennington immunity.

In countless references throughout her opposition, Plaintiff argues that the efforts of "the defendants" allegedly were intended to remove Plaintiff as the Executive Director of the WHA. See, e.g., ECF No. 93, p. 5 ("The Defendants' plans to oust Ms. Naughton manifested from a document referred to as 'a petition.' . . ."); ECF No. 93, p. 34 ("The Defendants' petition was a sham, and their intent was to mount pressure on Naughton until she was terminated or quit."). Similar allegations are contained in the Complaint.  For example, in her Second Amended Complaint, Plaintiff alleges that "The defendant's quest to terminate Naughton were various, continuous and unrelenting." ECF No. 36, p. 10, ¶ 31.  With respect to the petition that is the alleged impetus of Plaintiff's causes of action, Plaintiff alleges: "In November 2020, residents of WHA properties, at the behest of the defendants circulated a petition that was jointly authored by McAllister and Jamall (both are residents at Millbrook Village), which sought, inter alia, to have Naughton removed as Executive Director of the WHA due to alleged problems and issues with the WHA's property at Millbrook Village."  ECF No. 36, p. 10, ¶ 33.

6

However, petitioning activities intended to remove an official from employment are the quintessential activities protected by the right to petition and cannot, as a matter of law, be the "sham" that gives rise to the exception. As explained by the U.S. Supreme Court: "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action **at all**, . . . not one 'who genuinely seeks to achieve his governmental result, but does so through improper means' . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365, 380, 111 S. Ct. 1344, 1354, 113 L. Ed. 2d 382, 398 (1991).

Plaintiff argues that the activity was violative of her rights because the activity was done to remove her from her role as Executive Director. Plaintiff fails to appreciate that the alleged intent to remove her from the position of Executive Director cannot, as a matter of law, constitute a "sham" exception to Noerr-Pennington immunity because it is itself the ostensible object of the petition and incidental efforts by "the defendants" as alleged by Plaintiff. This is true because petitioning and speaking for the removal of an official is the paradigmatic activity that is protected by the immunity.

The case of *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992), cert. denied, 508 U.S. 957, 113 S. Ct. 2459, 124 L. Ed. 2d 674 (1993), illustrates this point. In *Eaton*, an education association and its representative actively complained against the principal and lobbied for the termination of the principal. It was alleged that the defendants "conspired" with the board of education for the termination, which allegedly violated the civil rights of the Plaintiff. Id., 296. Among the alleged activities was that one defendant specifically "told a reporter that if the Board did not fire Eaton, [the association] would assist . . . in filing a lawsuit against the Board." Id., 295. This threat was broadcasted by the media. Id. Additionally, the Court noted

that that "the [association defendant] supported the election of three of the five School Board members and that it 'cashed in' on that support by seeking his firing at the hearing."  Id., 295. The Plaintiff alleged that the defendant's "visible and vocal presence at the proceedings pressured the Board to take the action that it did against him." Id., 295.

The Court in *Eaton* agreed with the defendants that they were immunized from suit on first amendment grounds. The court found that this petition was not a sham because "[t]he petitioning and speaking clearly intended to accomplish the ostensible object, the removal of [the principal]." Id.  The Court explained that under the Noerr-Pennington doctrine, liability may not be assessed under § 1983 or the anti-trust laws except in very limited circumstances, for actions taken when petitioning authorities to take official action, regardless of the motives of the petitioners, even where the petitioning activity has the intent or effect of depriving another of property interests." Id., 298.

The Court in *Eaton* explained: "The Supreme Court has carved out a narrow 'sham' exception to this doctrine, which covers cases where the defendant intended to use the petitioning process merely to harass the plaintiff. . . . The actions of [the defendants] in this case do not fall within this limited exception. The petitioning and speaking clearly intended to accomplish the ostensible object, the removal of Eaton." Id., 298. See also *Stachura v. Truszkowski*, 763 F.2d 211, 213 (6th Cir. 1985), rev'd on other grounds, 477 U.S. 299, 106 S. Ct. 2537, 91 L.Ed.2d 249 (1986) (a private citizen who transmitted complaints about a teacher's methods to a school board and initiated "vehement and continuing protests, based on unfounded rumors, leading directly to [a teacher's] removal," was immunized from suit on first amendment grounds); *Stevens v. Tillman*, 855 F.2d 394, 395 (7th Cir. 1988), cert. denied, 489 U.S. 1065, 109 S. Ct. 1339, 103 L. Ed. 2d 809 (1989) (parent-teacher organization exerted

extensive pressure on a school board to terminate an elementary school principal, including that the group occupied the principal's office for three consecutive days, organized a boycott that kept more than 80% of the students out of the school, distributed handbills, picketed the school, and delivered tirades against her at meetings of the Board of Education).

Finally, it bears repeating here that petitioning activities are not shams even when caustic and false statements are alleged, or improper motives are asserted.[3]  These points and legal authorities were discussed in the Defendant's Motion to Dismiss.  Additionally, the "sham" exception does not apply when a "conspiracy" is asserted based on meetings between the government officials and private actors.  As explained by the Court in *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005): "Furthermore, there is no 'conspiracy' exception to the Noerr-Pennington doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights." Id., citing *City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 382-83, 113 L. Ed. 2d 382, 111 S. Ct. 1344 (1991).

Based on the foregoing authority, as well as the case law cited in the Motion to Dismiss, Plaintiff has not alleged facts demonstrating that the sham exception applies to this case.  This includes the petition itself, as well as that the defendants, as argued by the Plaintiff, have taken their claims to other forums, including the local newspapers and the Town of Windsor Council.  See ECF Doc. No. 93, p. 33.[4]  The activities of the defendants fall within

---

[3] In addition to the cases cited in support of the Motion to Dismiss, see *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) ("no matter what [defendant's] motives were, his petitioning activity as alleged in the . . . complaint is immunized under the Noerr-Pennington doctrine. . ."); citing *Boone v. Redevelopment Agency of the City of San Jose*, 841 F.2d 886, 894-95 (9th Cir. 1988) (stating that private meetings between government officials and individuals seeking to lobby the government is a form of advocacy protected under Noerr-Pennington.)

[4] Plaintiff also refers generically to "the defendants" "taking their claims" to "social media" and "public opinion." It is unclear what Plaintiff is referring to, if anything, separate and apart from the incidental petition efforts.

the precise fact patterns that are protected by the First Amendment from attack in a lawsuit by an employee whose removal was sought by petitioning.  In fact, they are similar to those alleged in the cases of *Eaton, Stachura* and *Stevens*.  In the present case, the impetus for all her causes of action is the petitioning, largely by the private citizen-residents of affordable housing overseen by Plaintiff Naughton, to register their complaints and seek redress for the Plaintiff's actions as the director of the public housing in which they lived.  That Plaintiff's removal was sought as part of this petitioning effort by the tenants legally cannot give rise to the sham exception.  Rather, it demonstrates that the sham exception does not apply here.  Accordingly, the Motion to Dismiss should be granted in its entirety.

**7.    Plaintiff's Arguments Do Not Demonstrate That the Facts Alleged State Causes of Action for Cognizable Equal Protection Claims.**

As a preliminary matter, this Court should conclude that the Plaintiff has abandoned any argument that discrimination was based on national origin.  Plaintiff makes conclusory references to racial animus only, without any discussion of any animus towards Plaintiff based on her national origin.  Accordingly, Plaintiff has abandoned arguments based on national origin for purposes of the Motion to Dismiss.

Next, as discussed below, Plaintiff has failed to articulate non-conclusory facts demonstrating the racial animus that Plaintiff is required to plead.  In fact, Plaintiff has not even argued that her actual Complaint sets forth allegations sufficient to demonstrate that the undersigned defendants had racial animus that caused her harm.  Rather, Plaintiff either attempts to supplement her allegations with argument in her opposition memorandum, or with submissions beyond the Complaint.  Both of these are improper and should not be considered in determining the Motion to Dismiss as discussed above.

Nonetheless, while the Court should not consider submissions outside of the pleadings, those submissions largely support the defendants' motion to dismiss rather than further plaintiff's argument that a cause of action has been adequately alleged. Most notably, the submissions include the following: (1) the only improper motive attributed by Plaintiff to any Defendant in this case is that "they" somehow wanted to get access to WHA funds (ECF No. 93-2, Naughton Affidavit, p. 6 ¶ 55); (2) Plaintiff, who is a black female, contends that the defendant Adam Gutcheon sought to replace Plaintiff with a different black female, which is a curious manner of attempting to demonstrate his alleged racial animus (ECF No. 93-8, McDougall Affidavit, p. 1, ¶1; and ECF 93, p. 24); (3) the submissions barely mention Jennifer Schumsky or Carol Englemann; (4) Plaintiff's submissions indicate that Adam Gutcheon called upon "all commissioners who has been complicit in this abandonment to resign," but Gutcheon did <u>not</u> state that only the African-American members should resign (ECF No. 104-11, p. 2, *There is a Problem in Housing Authority);* and (5) not a single submission contains a non-conclusory statement of fact based on personal knowledge evidencing racial animus by the defendants Englemann, Schumsky, Jaamal, or Gutcheon.

Thus, even if the materials beyond the pleadings are considered by the Court, the Motion to Dismiss by the undersigned defendants must be granted.  "Complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 362-63 (2d Cir. 1987) (claims properly dismissed where plaintiff alleged assistant attorney general "violated his rights in that they threatened witnesses, unlawfully seized property, submitted false statements to courts, told persons that he had engaged in fraud and sham, and illegally conspired with the Internal Revenue Service.")

11

With respect to the issue of racial animus discrimination, Plaintiff offers essentially five arguments. First, she offers conclusory statements that conduct was based on race. Of course, conclusory statements that an action was based on racial animus certainly are insufficient to state a cause of action. See *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015).

Second, Plaintiff relies on a general statement that essentially racism exists in the Town of Windsor. This statement is not alleged to have any contextual relationship with Plaintiff Naughton. Plaintiff also relies on an alleged statement <u>not</u> made by Gutcheon or any of the other undersigned defendants to the effect that some other people in the town (who are not parties to this case) liked Windsor the way it used to be at a time when it had a higher percentage of white residents. These references do not support the civil rights claims against the undersigned defendants. With regard to the alleged statement by Adam Gutcheon that racism exists in Windsor, Plaintiff's reliance on this is puzzling because it would seem to <u>not</u> support her cause of action at all. Racial discrimination claims logically cannot be premised on an assertion that the person allegedly acting with racial animus towards a group expressed concern that other people in the town had that racial animus. It is simply an illogical argument that makes no sense.

Third, Plaintiff's memorandum (as opposed to her pleading) attempts to offer a feigned selective treatment argument that is clearly not supported by the facts she offers. Plaintiff's Complaint makes no allegations of selective treatment based on other identified persons in similarly situated positions. Plaintiff's attempt to rehabilitate her Complaint with an argument that prior Executive Directors were not placed on a probationary period[5] and that a prior commissioner who has no relationship to this case <u>unsuccessfully attempted</u> to stop Plaintiff

---

[5] Which is irrelevant to this case as Plaintiff's claims have nothing to do with her probationary period, which she was well beyond at the time of the events in this case.

from making presentations at prior commission meetings should not be considered by the Court. Even if they were considered, they do not support a valid cause of action. First, there is no dispute that none of the undersigned individual defendants were on the WHA board of commissioners when any other Executive Director was in place, and, thus, the arguments of selective treatment have no applicability to them. Additionally, the examples of different treatment offered by Plaintiff are remote at best and do not demonstrate selective treatment of someone similarly situated. Plaintiff certainly has not alleged that any prior Caucasian Executive Director received substantial criticism from tenants regarding their living conditions of the same nature under similar circumstances as the complaints about Plaintiff in this case, and that such Executive Director was subjected to different treatment by the undersigned defendants.

Additionally, a change in policy by a completely different board of commissioners is not relevant to Plaintiff's claim here. In fact, the requirement of a probationary period was apparently put in place by some of the very commissioners that Plaintiff alleges resigned or were replaced because they supported Plaintiff. Such claimed different treatment of prior Executive Directors most certainly is not alleged to have been at the hands of any of the undersigned defendants. Moreover, Plaintiff makes no allegation that that any alleged different treatment of a prior Executive Director was due to race. See *Penlyn Development Corp. v. Incorporated Village of Lloyd.* 51 F. Supp. 2d 255, 264 (E.D.N.Y. 1999) (To state a valid claim, Plaintiff must allege facts showing "selective treatment was based on impermissible considerations, such as race . . . .") Indeed, given that Plaintiff's probationary period was required by a prior Commissioners that are <u>not</u> alleged to have discriminated against Plaintiff, such arguments are disingenuous at best and cannot support a valid cause of action against the undersigned defendants.

Next, Plaintiff argues that unidentified people, who are seemingly tenants and not even parties to this case, have used racial epitaphs about Plaintiff.  Plaintiff does not identify who those people are, let alone when they made these comments, and whether they have any relationship to the Plaintiff's termination.  Plaintiff most certainly does not attribute any of those racial epitaphs to any of the undersigned defendants, nor does Plaintiff allege any connection between the undersigned defendants and the tenants or other persons who referred to her with those racial epitaphs. Simply put, none of these arguments are sufficient to demonstrate that the Motion to Dismiss of the undersigned defendants should not be granted.

In sum, Plaintiff's Opposition fails to set forth non-conclusory facts to support her claim that there was racial animus and discriminatory intent on the part of the undersigned defendants, let alone with respect to Plaintiff in particular.  Absent such discriminatory intent, the causes of action against the undersigned defendants based on race fail as a matter of law.

Plaintiff also has not adequately addressed the legal sufficiency of her allegations against the WHA.  As noted in the Motion to Dismiss, in addition to the failure of Plaintiff's claim due to the absence of discriminatory intent, Plaintiff's claim against the Windsor Housing Authority pursuant to § 1981 and § 1983 fails because Plaintiff must show that the challenged acts were performed pursuant to a policy or custom in order to hold liable the City or individual Defendants in their official capacity. In the present case, the Plaintiff's opposition fails to allege any facts indicating that discrimination occurred as part of a custom, policy or procedure of the Windsor Housing Authority, and, therefore, that claims against WHA itself must be dismissed.

### 8. Plaintiff Fails to Allege Facts That Support a Substantive Due Process Violation.

In response to the undersigned Defendants' Motion to Dismiss, Plaintiff attempts to cure her pleading deficiency by referring to completely new and unalleged assertions that the actions

of the Defendants (again generically using the term "the defendants" collectively) had the effect of "whipping up" the sentiments of the tenants and that unidentified people flattened the tires of unidentified WHA "staff" at some unknown point in time and made WHA "staff" fear for their safety.

First, Plaintiff cites no legal authority for the notion that petitioning activities by some defendants creates a form of vicarious liability for the illegal actions of unrelated and unknown third parties.  Second, the Plaintiff cannot cure her pleading deficiency by raising different claims in her legal brief.  Third, Plaintiff does not allege that she herself was the subject of any assault on her or her property such as her vehicle, and Plaintiff does not have standing to assert claims on behalf of third parties such as the unidentified "staff" who had tires flattened or felt concerned for their safety.  Fourth, the Plaintiff does not allege that that any of the undersigned defendants took part in any of the alleged activity, including but not limited to the tire flattening. Finally, there is no case law cited by Plaintiff with any factual scenario similar to the present case that involves a petition and conduct seeking to redress tenant problems that gave rise to a validly stated cause of action for a substantive due process violation.

Aside from the new assertions in Plaintiff's memorandum in opposition to the Motion to Dismiss, which are insufficient to create a substantive due process claim, the Plaintiff is left with the assertion that her termination violated Plaintiff's property interest in her contractual employment with the Windsor Housing Authority. However, as explained in the Motion to Dismiss, it is well settled that those allegations fail to state a cause of action.

**9. Plaintiff's Conspiracy Claims Pursuant to § 1985 (3) Fail to State a Claim Upon Which Relief Can be Granted.**

In support of Plaintiff's claim pursuant to § 1985 (3), Plaintiff baldly asserts that "all the non-state actors in this case were acting in concert with state actors." ECF No. 93, p. 50.  This

bald conclusory assertion is inadequate.  Plaintiff next discusses claimed actions by other parties to this case, but Plaintiff does not plead that there was involvement by the undersigned defendants to conspire in any activities with state actors in these separate actions.  The closest that Plaintiff comes to alleging any coordination is by raising facts outside the pleadings (which may not be considered here) related to "a meeting" with tenants on March 21, 2021, where *some defendants* were present and they allegedly discussed the alleged "plan to terminate the Plaintiff." ECF No. 93, p. 51.  However, this alleged meeting occurred the day before this civil action was filed in federal court.  In other words, it occurred long after the vast majority of the events, including the November 2020 petition, the newspaper articles, the meetings before the Town Council, the meetings of the WHA commissioners, and the extended leave of absence from work by Plaintiff, etc., that comprise the basis of Plaintiff's Complaint.

Simply put, a meeting subsequent in time to the conduct alleged to constitute a violation of civil rights cannot logically be a meeting to conspire to plan the prior conduct that already occurred. More importantly of course, this type of meeting between government officials and private parties/constituents are the precise conduct afforded immunity by the Noerr-Pennington immunity as discussed above.  Plaintiff has not alleged any other facts demonstrating that a specifically identified state actor coordinated to do anything with a specifically identified non-state actor, let alone do something that would be a deprivation of a civil right.

Of course, what is independently dispositive of Plaintiff's alleged conspiracy claim pursuant to § 1985 (3), is that Plaintiff does not allege any conduct indicating that any action was done with a racial animus.  To assert a claim under Section 1985 (3), plaintiffs must allege that the defendants have, with racial or other class-based discriminatory animus, conspired to deprive

them of a constitutional or other federal right. See *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412,

426-27 (2d Cir. 1995); *Spencer v. Casavilla*, 903 F.2d 171, 175 (2d Cir. 1990).

As stated in the undersigned defendants' Motion to Dismiss, in this case Plaintiff has

made no factual allegation that the actions of the defendants were the result of any race or other

class-based animus against her.  The Plaintiff's claims pursuant to § 1985 (3) fail for the same

reason that her §1983 claim fails as discussed above.

**10. Plaintiff's Opposition Does Not Show That Her Section 1986 Claims Survive
Dismissal.**

As explained in the Motion to Dismiss, because Plaintiff has failed to state a § 1985

conspiracy claim against each undersigned defendant, she has no actionable § 1986 claim.

Accordingly, the Plaintiff's § 1986 claims for failure to prevent the conspiracy pursuant to §

1986 must be dismissed.  Plaintiff does not dispute this point in her opposition.

Additionally, Plaintiff's discussion regarding her § 1986 claim revolves almost

exclusively around the notion that various defendants were aware that there was an effort to have

Plaintiff removed as Executive Director of the WHA.  Knowledge of that alone however does

not constitute a conspiracy to violate Plaintiff's civil rights.  Rather, in this case, there also would

need to be allegations of fact demonstrating that removal was sought because of Plaintiff's race

and that the named defendant had "actual knowledge" of that race-based civil rights violation by

a state actor.   Plaintiff has not made any such non-conclusory factual allegation in this case to

support that element, let alone against each of the undersigned defendants.

**11.     Plaintiff's Claim of Retaliation Against Defendants Fails to State a Cause of
Action.**

With respect to the Plaintiff's Retaliation cause of action pursuant to § 1983, the

undersigned defendants argued in their Motion to Dismiss that a valid cause of action was not

stated because (1) the claim requires that a Plaintiff allege defendants acted under the color of state law, which Plaintiff did not allege; and (2) the Plaintiff's own factual allegations preclude the claim because Plaintiff's own Complaint alleges that the plan to terminate her employment occurred *before* this federal action was filed.  Defendants also argued that the Retaliation claim against Defendant Jennifer Schumsky fails because according to Plaintiff's allegations, Ms. Schumsky herself was terminated from the Windsor Housing Authority prior to Plaintiff's termination.  Therefore, Ms. Schumsky could not have exercised any decision-making over the Plaintiff's termination, nor she is alleged to have done so. Accordingly, the Plaintiff's claim against Ms. Schumsky fails on that independent ground.

Plaintiff's Opposition did not respond directly to the arguments of the Defendants' Motion to Dismiss the Retaliation claim.  Instead, Plaintiff merely recited the elements of a retaliation claim and stated that the termination was close in time to the original filing of this federal action.  This argument misses the entire point of Defendant's Motion to Dismiss, which is based on the specific allegations in the Amended Complaint failing to state a cause of action. Plaintiff has abandoned her retaliation claim by failing to address the arguments in the actual Motion to Dismiss, and that claim should accordingly be dismissed.

**12. State Law Claims**

As stated in the Motion to Dismiss, the undersigned defendants submit that once this Court dismisses the federal claims as requested, the Court should decline to continue to exercise jurisdiction over the state law claims, which is the normal course based on the legal authority cited in the Motion to Dismiss.  Plaintiff's Opposition contains no valid argument as to why that should not occur.  Furthermore, to the extent that this Court addresses the sufficiency of the state law claims, the Court should hold that they are subject to the Noerr-Pennington immunity and

that the sham exception is inapplicable based on the above discussion.  Beyond that, with the exception of addressing Plaintiff's status as a public official or figure, the Defendants rest on their arguments in their Motion to Dismiss as to the Plaintiff's failure to state causes of action with respect to the other state law claims.  The Plaintiff's opposition as to the other arguments made in the Motion to Dismiss the state law claims (1) do not respond to the defendant's specific arguments and are abandoned by the Plaintiff, (2) the Plaintiff fails to cite any facts in the Complaint and legal authority that requires further reply, or (3) the Plaintiff's arguments suffer from the general same deficiencies as discussed above, including attempts to assert unpled facts and failure to discuss the individual actions of the individual undersigned defendants with respect to the state law claims.

With respect to the public official or public figure issue, Plaintiff asserts that she is not one.  She is incorrect.  As alleged by Plaintiff herself, she was "the Executive Director of the Windsor Housing Authority, making her the chief operating officer of the organization charged with its' day-to-day management."  Am. Compl., ¶ 5.   The WHA is a quasi public entity, which is governed by the Board of Commissioners, who themselves are appointed by the Town of Windsor.  Am. Compl., ¶ 14.  The WHA's purpose is to provide safe and affordable housing to low-income, elderly and disabled people in the town of Windsor.  Am. Compl., ¶ 22.  The events underlying plaintiff's claims were the subject of both town government hearings, and media attention as alleged repeatedly by Plaintiff.

 "In an action for defamation, a public official is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves by clear and convincing evidence that the falsehood was published with 'actual malice.'" *New York Times Co. v. Sullivan*, 376 U.S 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).  The United States Supreme Court

indicated that the underlying purpose of limiting an individual's ability to protect his reputation was to allow citizens to voice their opinions more freely on matters of public concern. Id., 270. "Debate on public issues should be uninhibited, robust and wide-open, and may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Id.

Accordingly, in Connecticut, police officers that were mere patrolman, and grade-school teachers have been deemed to be public officials for defamation purposes. See *Moriarty v. Lippe*, 162 Conn. 371, 378, 294 A.2d 326 (1972) (police officer is public official); *Kelley v. Bonney*, 221 Conn. 549, 580-3, 606 A.2d 693 (1992) (teacher is public official); see also *Rosenblatt v. Baer*, 383 U.S. 75, 15 L. Ed. 2d 597, 86 S. Ct. 669 (1966) (director of a ski resort who characterized his role as the one responsible for its operation was a public figure for defamation claim). Notably, in other jurisdictions, Courts have specifically held that the director of a local housing authority was a public figure for defamation purposes. See, e.g., *Smith v. Wagner,* 403 Pa. Super. 316, 588 A.2d 1308, 1311 (1991) (housing authority director is public figure for purposes of defamation action).

In this case, contrary to Plaintiff's argument, given the Plaintiff's own allegations regarding her chief operating officer role and her control of management of the Windsor Housing Authority as its Executive Director, she is a public figure or public official for purposes of this case.

## **CONCLUSION**

Based on the foregoing, it is requested that this Court grant the Motion to Dismiss all causes of action alleged against the defendants Adam Gutcheon, Taariq Jaamal, Windsor Housing Authority, Carol Englemann and Jennifer Schumsky.

Respectfully submitted,

By:____/s/ *William D. Catalina*_____
William D. Catalina ct27814
Beverly Knapp Anderson ct05888
NEUBERT PEPE MONTEITH P.C.
Their Attorneys
750 Main Street, Suite 200
Hartford, CT  06103
(860) 548-1122 Phone
(860) 548-1223 Fax
Email: wcatalina@npmlaw.com

**ATTORNEYS FOR DEFENDANTS ADAM
GUTCHEON, TAARIQ JAAMAL, CAROL
ENGLEMAN, JENNIFER SCHUMSKY, AND
WINDSOR HOUSING AUTHORITY**

**<u>Certificate of Service</u>**

I hereby certify that on this 6th day of December 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ *William D. Catalina*
William D. Catalina (ct27814)