**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| URLEEN NAUGHTON | : | CIVIL NO. 3:21CV00402(KAD) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| ADAM GUTCHEON, ET AL, | : | |
| *Defendants* | : | DECEMBER 6, 2021 |

## DEFENDANT JANE GARIBAY'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff has alleged that Defendant Garibay, the State Representative from House District 60, has conspired with numerous other defendants to terminate her as the Executive Director of the Windsor Housing Authority (the "WHA") on account of her race and national origin.  In response to Rep. Garibay's Motion to Dismiss (the "Motion"), Plaintiff filed a 90-page opposition brief  (the "Opposition") with 40 exhibits, including 7 affidavits.  Those exhibits are not properly before the Court and should not be considered when ruling on the Motion.  However, even if the Court did deem them appropriately before it, they do nothing to cure the deficiencies discussed in the Motion.  Therefore, the Court should grant the Motion and dismiss all claims as to Rep. Garibay.

## I.      THE FORTY EXHIBITS ATTACHED TO PLAINITFF'S OPPOSITION MEMORANDUM ARE NOT PROPERLY BEFORE THE COURT

"It is well-established that in deciding a Rule 12(b)(6) motion, the court must limit itself to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . ." *DePasquale v. Daniel DePasquale*, 12-CV-2564, 2013 U.S. Dist. LEXIS 30215, at *13 (E.D.N.Y. Mar. 1, 2013).  Consequently, "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu,*

*P.C. v. SocketWorks Ltd. Nig.*, 265 F.R.D. 106, 122-123 (S.D.N.Y 2010); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint through filing an objection to motion to dismiss). This is especially true with affidavits submitted in opposition to a motion to dismiss. *See, e.g., Novie v. Vill. of Montebello*, 10-CV-9436, 2012 U.S. Dist. LEXIS 115948, at *26 (S.D.N.Y. Aug. 16, 2012) ("[I]t is improper for a court to consider declarations and affidavits on a motion to dismiss."); *Williams v. PMA Cos.*, 419 F. Supp. 3d 471, 483 (N.D.N.Y. 2019).

As noted above, a Court may consider documents referenced in the complaint. "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 123 (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)). Exhibit 9 contains a copy of a January 19, 2021 letter sent to HUD and signed by Rep. Garibay, as well as Rep. Brandon McGee and Rep. Bobby Gibson. Although the Amended Complaint alleges that "[i]n January 2021, Defendant Garibay "sent letters and emails complaints to HUD," Am. Compl. ¶ 110, that is not a sufficient reference to Exhibit 9 for the Court to consider it. However, assuming that it was, Exhibit 9 actually provides additional support to Rep. Garibay's arguments, as will be explained below.

## II. PLAINTIFF HAS NOT CHALLENGED REP. GARIBAY'S ASSERTION THAT THE AMENDED COMPLAINT IS DEVOID OF ALLEGATIONS THAT SHE TOOK ANY ACTIONS THAT LED TO PLAINTIFF'S TERMINATION OR WERE TAKEN ON ACCOUNT OF PLAINTIFF'S RACE

As was explained in Part II of Rep. Garibay's memorandum in support of the Motion (the "Memorandum"), Plaintiff cannot establish either an equal protection violation or a conspiracy to violate Plaintiff's equal protection rights without showing two things. The Opposition makes clear that the harm that Plainitff is complaining of is her firing as Executive Director. Pl. Br. at 36 ("Ms. Naughton's Amended Complaint clearly provided that the defendants intentionally deprived of her

constitutional right to her employment."). Therefore, Plaintiff must properly allege that Rep. Garibay took some action to further Plaintiff's termination as Executive Director, and that Rep. Garibay's actions were motivated by a racial or ethnic animus. Plaintiff has done neither.

Plaintiff has not alleged, nor could she, the Rep. Garibay directly terminated Plaintiff because Rep. Garibay is not a member of the Windsor Housing Board (the "WHB"). Rather, in her Opposition, Plaintiff reiterates that Defendant Garibay's allegedly improper actions were sending letters to HUD and CHFA in January 2021 and participate in a March 21, 2021 meeting. Pl. Br. at 24. However, Plaintiff has not pointed to any allegation to demonstrate how those actions furthered Plaintiff's removal as Executive Director. There are no allegations that the WHB ever considered Rep. Garibay's letters when making the decision to terminate Plaintiff. Nor are there any allegations that Rep. Garibay took any actions during or after the March 21, 2021 meeting that furthered Plaintiff's termination. Her mere presence at the meeting is insufficient. *See United States v. Macklin*, 927 F.2d 1272, 1277 (2d Cir. 1991) (In criminal context, "mere presence at the scene of a crime, even when coupled with knowledge that a crime is being committed, is insufficient to establish membership in a conspiracy."). This is fatal to all of Plaintiff's federal causes of action that are based on an equal protection violation.

Equally fatal to those claims is the lack of any allegation showing a discriminatory animus on the part of Rep. Garibay. On pages 33 – 34 of the Opposition, Plaintiff reiterates the allegations in the Amended Complaint that indicate a discriminatory animus. They include statements allegedly made by Defendants Gutcheon and Trinks. None of those statements establish a racial animus by those defendants, much less a conspiracy based on such animus. Morevoer, there are no allegations that Rep. Garibay was aware of those statements, let alone endorsed them, nor are there any allegations that Rep. Garibay ever made any improper statements.

Because Plaintiff has not properly alleged that any of the alleged actions taken by Rep. Garibay led to her termination, or that Rep. Garibay acted with a racial or ethnic animus, all claims based on an equal protection violation, including all conspiracy claims, must be dismissed.  As was set forth on pages 12-13, this would include Plaintiff's §§ 1985 and 1986 conspiracy claims, which also require Plaintiff to establish that the conspiracy was motivated by a racial animus.  *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 1999) (racial animus required for § 1985 claim); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (Section "1986 claim must be predicated upon a valid § 1985 claim.").

## III.   PLAINTIFF HAS FAILED TO ADDRESS REP. GARIBAY'S ARGUMENT THAT THE SUBSTANTIVE DUE PROCESS CLAIM IS SUBSUMED BY THE EQUAL PROTECTION CLAIM

In Part V of the Memorandum, Rep. Garibay argues that Plaintiff's substantive due process claim is subsumed in Plaintiff's more particularized allegations of violations of her equal protection rights.  Plaintiff did not this argument in the Opposition and, therefore, has abandoned this claim.  *See, e.g., Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (dismissing several claims as a result of the plaintiff's lack of response); *Thurmond v. Univ. of Connecticut*, 3:18cv1140, 2019 U.S. Dist. LEXIS 14622, at *7 (D. Conn. Jan. 30, 2019) (Hall, J.) (noting that "[c]ourts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them," and finding claims abandoned); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) ("In his brief, Brandon did not raise any arguments opposing Defendants' motion regarding these two claims. Accordingly, the Court deems Brandon's first and third claims abandoned.").

Additionally, Plaintiff has failed to challenge Rep. Garibay's assertion that the Second Circuit has not recognized that a public employee, such as the Plaintiff, has a "substantive due

process" right in employment. *McClary v. O'Hare,* 786 F.2d 83 (2d Cir.1986); *see also Chaffer v. Bd. of Educ.*, 75 Fed. Appx. 12, 13 (2d Cir. 2003). Plaintiff directs her entire argument to the shock the conscious prong of the test, thereby abandoning her right to now challenge the other prong of the test. As for the specific allegations against Rep. Garibay, it can hardly be deemed conscious-shocking for a state representative to write a letter to governmental entities about complaints that she and other members of the Connecticut General Assembly had received. Should the Court deem Exhibit 9 incorporated by reference into the Amended Complaint, it can see that the "conscious-shocking" letter merely brings to the attention of the Director of HUD allegations from "several different complaints concerning the conduct of the Executive Director of the Windsor Housing Authority towards residents." Not only does submitting letters such as Exhibit 9 not come close to rising to the level of "egregious official conduct," *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), the letter is related to a legitimate governmental purpose of attempting to address the concerns of constituents. Consequently, such alleged behavior cannot as a matter of law cannot constitute a substantive dues process violation. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) ("Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983.") (citation omitted; internal quotation marks omitted).

## IV.   THERE ARE NO ALLEGATIONS THAT REP. GARIBAY RETALIATED AGAINST PLAINTIFF FOR FILING THIS LAWSUIT

The Oppositon makes clear that the retaliatory action taken by Defendants on account of Plaintiff's lawsuit was terminating her as Executive Director. Pl. Br. at 58. As was explained in Part VI of the Memorandum, all of the actions allegedly taken by Rep. Garibay occurred prior to the filing of Plaintiff's lawsuit and, therefore, could not have been taken for a retaliatory purpose.

In the Opposition, Plaintiff sets out additional actions taken by various Defendants that she claims furthered her eventual termination.  Pl. Br. at 59-60.  Even if the Court considers those allegations, which it should not, none of them concern Rep. Garibay.

## V.   REP. GARIBAY'S ACTIONS ARE PROTECTED UNDER THE *NOERR-PENNINGTON* DOCTRINE

Plaintiff argues that the *Noerr-Pennington* Doctrine does not apply to Rep. Garibay's actions in sending letters to HUD and the CFHA because those letters were part of "an Orwellian-like authoritarian mind controlling scheme designed to manipulate the lesser sentiments of the WHA residents/tenants, for the defendants ends."  Pl. Br. at 64.  There are no factual allegations in the Amended Complaint to support this baseless and conclusory statement.  Moreover, this does not address the crux of Rep. Garibay's argument that sending letters to HUD and the CFHA are protected activity.

As was discussed VII of the Memorandum, the *Noerr-Pennington* doctrine, which "has its roots in the First Amendment . . . protects a party's right to petition all branches of the government." *Spinner Consulting LLC v. Stone Point Capital LLC*, 3:18cv1341(JBA), 2020 U.S. Dist. LEXIS 181942, at *15 (D. Conn. Sept. 30, 2020) (citing *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 20 (2d Cir. 1980)).  This doctrine protects Rep. Garibay from suit concerning the statements that she made to HUD and the CFHA.

Plaintiff attempts to avoid this outcome by arguing that *after* Rep. Garibay sent the letters, she was told by HUD that Plaintiff "was one of a few nation-wide 'high performing Executive Director[s]."  Pl. Br. at 63.  Plaintiff asserts that after Rep. Garibay learned this, she should have ceased conspiring to terminate Plaintiff.  Pl. Br. at 63.  In other words, Plaintiff appears to be arguing that the *Noerr-Pennington* doctrine does not apply to making false statements, even if the alleged falsity of the statements was only learned after the statements were made.  This is not the

6

law.  To the contrary, "Noerr-Pennington protection has been extended to all advocacy intended to influence government action, including to allegedly false statements." *Tuosto v. Philip Morris USA Inc.*, 05civ9384, 2007 U.S. Dist. LEXIS 61669, at \*15 (S.D.N.Y. Aug. 21, 2007) (citing *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140-42 (1961)).

Plaintiff also argues that Rep. Garibay's letters were shams as they were part of Defendants' "mind controlling scheme."  Pl. Br. at 64.  The Amended Complaint contains no allegations to support such a baseless claim.  Additionally, the sham exception only applies "where the governmental petitioning is a mere sham covering attempts to interfere directly with the business relationships of *competitors*." *T.F.T.F. Cap. Corp. v. Marcus Dairy, Inc.*, 33 F. Supp. 2d 122, 125 (D. Conn. 1998) (emphasis added).  Moreover, the petitioning action must be "'objectively meritless.'" *Id.* (quoting *Prof. Real Estate Inv., Inc. v. Columbia Pictures Indust., Inc.*, 508 U.S. 49 (1993)).  There are no allegations that Rep. Garibay contacted HUD and the CFHA because Plaintiff was a "competitor."  The sham exception has no relevance to the claims against Rep. Garibay.

## VI.   PLAINTIFF IS A PUBLIC FIGURE FOR PURPOSES OF HER DEFAMATION AND FALSE LIGHT CLAIMS

Plaintiff argues that, although she was the Executive Director of the WHA, she was not a public figure or public official because she "is a private person" who has never "held herself out to the public on any issue of public concern, nor had she enjoyed 'pervasive fame and notoriety,' by voluntarily injected herself into a public controversy."  Pl. Br. at 79-80.  *See also* Pl. Br. at 83 (Plaintiff "during her employment was a private person who resided in the town of Windsor. She was a mere wife and mother and went about her business without injecting herself in public controversies and affairs.").  Although not all public employees are "public officials," the position of Executive Director satisfies the criteria to be considered a public official.

"[T]he 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966); *Moriarty v. Lippe*, 162 Conn. 371, 378 (1972) ("The plaintiff here has, or appears to the public to have, substantial responsibility for or control over the conduct of government affairs . . .sufficient to be a public official."). To be considered a public official, one need not hold a position of high rank. To the contrary, in *Moriarty*, the Connecticut Supreme Court concluded that a patrolman was a public official because, "[a]lthough a comparably low-ranking government official, a patrolman's office, if abused, has great potential for social harm and thus invites independent interest in the qualifications and performance of the person who holds the position." *Id. See also Rosenblatt*, 383 U.S. at 85 (supervisor of a county recreation area considered to be a public official); *Woodcock v. Journal Pub. Co., Inc.*, 230 Conn. 525, 535 n.9 (1994) (member of a municipal planning and zoning commission public official); *Brown v. K.N.D. Corp.*, 7 Conn. App. 418, 422 (1986), *rev'd on other grounds*, 205 Conn. 8 (1987) (assistant city manager, who "shared responsibility for the budget, management services, data processing and personnel," considered a public official). In short, if "a position would invite public scrutiny entirely apart from the statements made by the defendant," then the person in that position will be considered a "public official." *Brown*, 7 Conn. App. at 422. The above cases make clear that, as the "chief operating officer" of the WHA charged with its "day to day management," Am. Compl. ¶ 5, and with responsibility for administering public housing in the Town of Windsor, Plaintiff was a public official for purposes of her defamation and false light claims.

Because Plaintiff is a public official, to prevail on her defamation and false light claims, Plaintiff must establish that Rep. Garibay made her alleged statements with "actual malice."

*Gleason v. Smolinski*, 319 Conn. 394, 431 (2015).  In her Memorandum, Rep. Garibay argued that the Amended Complaint does not contain any allegation that she knew the statements in "the petition" were false or recklessly disregarded the falsity of the statements when she relayed them to HUD and the CFHA.  Memo at 24.  Not only does Plaintiff not refute this assertion, she confirms it when she argues that, in responding to Rep. Garibay's letter, HUD informed her that Plaintiff was "one of a few high performing executive directors, nationwide."  Pl. Br. at 37.  Consequently, Rep. Garibay could not have acted with actual malice when she contacted HUD and the CFHA.

## VII.   PLAINTIFF'S CLAIMS FOR INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY CONN. GEN. STAT. § 4-165

Plaintiff has brought claims for intentional and negligent infliction of emotional distress against Rep. Garibay.  Plaintiff's opposition brief makes clear that the Court lacks subject matter jurisdiction over those claims pursuant to Conn. Gen. Stat. § 4-165.[1]  Section 4-165 states:

> No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter.

Conn. Gen. Stat. § 4-165.  Under this provision, a state officer is immune from suit and personal liability for all claims involving damage or injury caused in the discharge of her duties or within the scope of her employment, provided her conduct was not wanton, reckless or malicious.

In this case, Rep. Garibay was acting within the scope of her employment as a member of the General Assembly when she sent letters to both HUD and the CFHA concerning issues at the WHA that had been brought to her attention.  As Exhibit 9 makes clear, her letter to HUD not only was sent on official General Assembly letterhead, it was signed not just by Rep. Garibay, but also

---

[1] Although not raised in Rep. Garibay's initial memorandum, § 4-165 immunity implicates the Court's subject matter jurisdiction and, therefore, may be raised at any time. *See Kelly v. Albertsen*, 114 Conn. App. 600, 605 (2009).

by two other state representatives.  Given that, Plaintiff's negligence claims fails as a matter of law.  *See Lawrence v. Weiner*, 154 Conn. App. 592, 594 (2014) ("General Statutes § 4-165 grants state employees immunity from suit from negligence claims regarding conduct arising out of the scope of their employment.").

As for Plaintiff's intentional infliction of emotional distress claim, as Rep. Garibay previously argued, sending letters to HUD and the CFHA conveying concerns from constituents does not constitute extreme and outrageous conduct.  Plaintiff's opposition brief confirms this when she indicates that what should have made Rep. Garibay aware that her letters contained allegedly false statements was HUD's response to her letter. Pl. Br. at 87.  If Rep. Garibay's letters cannot be considered extreme and outrageous, then § 4-165 also would immunize her from claims of intentional infliction of emotional distress.  See *Martin v. Brady*, 261 Conn. 372, 377 (2002) (To overcome § 4-165 immunity, must allege "conduct [that] tends to take on the aspect of *highly unreasonable conduct*, involving an *extreme departure from ordinary care*, in a situation where a high degree of danger is apparent.") (emphasis added).

Additionally, Plaintiff's claims for emotional distress fail because Plaintiff has indicated that those claims are related to the termination process.  Pl. Br. at 86-87.  As has been explained previously, Plaintiff has not alleged that Rep. Garibay's letters played any role or had any effect on the termination process.

## CONCLUSION

For the reasons set forth above, as well as those in Rep. Garibay's Memorandum, the Court should dismiss the Amended Complaint as to Rep. Garibay in its entirety.

Respectfully submitted,

DEFENDANT
JANE GARIBAY

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Philip Miller*
Philip Miller (ct25056)
Assistant Attorney General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Phil.Miller@ct.gov
*Attorney for Defendants*

**<u>Certificate of Service</u>**

I hereby certify that on December 6, 2021, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Philip Miller*
Philip Miller
Assistant Attorney General
