UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| URLEEN NAUGHTON, | ) | 3:21-CV-00402 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GUTCHEON, et al., | ) | |
| *Defendants*. | ) | |
| | ) | JULY 18, 2022 |

**MEMORANDUM OF DECISION RE: MEDIA DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 60, 71) & PLAINTIFF'S MOTION FOR LEAVE TO AMEND (ECF NO. 125)**

Kari A. Dooley, United States District Judge

Plaintiff, Urleen Naughton, commenced this action alleging in her Amended Complaint, *inter alia*, defamation[1] and false light[2] claims against, among others, the Windsor Journal Weekly ("Windsor Journal"), its reporter, Anthony Zepperi, the Journal Inquirer, and its reporter, Joe Chaison (collectively, "Media Defendants"). The Media Defendants have each moved to dismiss the claims against them on a variety of bases, including that Plaintiff's claims are barred by the Fair Report Privilege. Plaintiff opposes[3] the Media Defendants' motions to dismiss and requests

---

[1] "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Simms v. Seaman*, 308 Conn. 523, 547–48, 69 A.3d 880 (2013).

[2] "The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true. . . ; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 131, 448 A.2d 1317 (1982) (citation omitted; internal quotation marks omitted).

[3] Local Rule 7(a)(5) provides in relevant part: "Except by order of the Court, memoranda . . . shall be no more than forty (40) 8 1/2" by 11" printed pages, exclusive of pages containing a table of contents, table of statutes, rules or the like." Local Rule 7(a)(5) requires parties seeking permission to depart from these limitations to file a motion "at least seven (7) days before the deadline for the filing of the memorandum at issue." Plaintiff did not file any such motion. Notwithstanding, Plaintiff's memoranda in opposition to the Media Defendants' motions to dismiss are each fifty pages and contain an additional thirty-four pages of exhibits. (ECF Nos. 96, 97) Further, Plaintiff's opposition memoranda each request that the Court "incorporate by reference" four additional memoranda of law and corresponding exhibits that Plaintiff filed in opposition to other motions to dismiss filed by other defendants in this litigation that the Court does not address herein. (ECF No. 96 at 1); (ECF No. 97 at 1) Those memoranda equate to an additional 314 pages with an additional 136 pages of exhibits. (ECF Nos. 92–95) Moreover, following Plaintiff's filing of her memoranda in opposition to the Media Defendants' motions to dismiss, Plaintiff moved to supplement her

leave from the Court to file a second amended complaint.[4] For the reasons set forth below, the Media Defendants' motions to dismiss are GRANTED. (ECF Nos. 60, 71) Plaintiff's motion for leave to file a second amended complaint is DENIED. (ECF No. 125)

**Standard of review**

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), the "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id*.

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint. . . ." *McCarthy v. Dun &*

---

opposition with 204 additional pages of exhibits. (ECF No. 104) In granting that motion, the Court explicitly did not determine the propriety of Plaintiff's supplemental submission or whether the submission is properly before the Court on a motion to dismiss. (ECF No. 108)

[4] Specifically, Plaintiff seeks to file a second amended complaint to "sharpen the assertions" against the Media Defendants and "to correct the counts applicable to" the Media Defendants. The Media Defendants object to Plaintiff's request, arguing, *inter alia*, that any amendment would be futile.

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). However, "it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents . . . incorporated by reference in the complaint." *Halebian v. Berv*, 644 F.3d 122, 131 (2d Cir. 2011); *McCarthy*, 482 F.3d at 191. And "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

**Allegations**

The Court accepts as true the allegations in Plaintiff's Amended Complaint, which are summarized as follows. Plaintiff is an African American individual with thirty years of experience in housing management. From August of 2018 through her termination on May 10, 2021, Plaintiff was employed as the Executive Director of the Windsor Housing Authority ("WHA"), a quasi-public entity.[5] As the Executive Director, Plaintiff was responsible for managing the daily operations of the WHA.

Windsor Journal and Journal Inquirer are local newspapers which cover news and events of concern to citizens in and around Windsor, Connecticut. Zepperi is a reporter for Windsor Journal. Chaison is a reporter for Journal Inquirer.

Plaintiff alleges that, beginning in late October of 2020, members of the Board of Commissioners and the WHA began a concerted and conspiratorial effort to oust Plaintiff from

---

[5] The WHA is governed by the Windsor Housing Board of Commissioners ("Board of Commissioners"). In accordance with the WHA's bylaws, the Board of Commissioners have the power to hire and terminate the WHA's Executive Director. The Board of Commissioners also establishes policies for the WHA, which are then implemented by the Executive Director.

her position as Executive Director on account of her race and national origin.[6] In accordance with this effort, residents McAllister and Jamaal, jointly authored and circulated a petition which sought to have Plaintiff removed as Executive Director.[7] The petition raised a number of complaints concerning the condition and management of the particular WHA property in which McAllister and Jamaal resided. Plaintiff alleges that the petition contained numerous false and defamatory statements related to her performance as Executive Director of the WHA.[8]

Thereafter, the petition was presented to the WHA, the Windsor Town Council, the Board of Commissioners, the Connecticut Housing Finance Authority ("CHFA"), and the United States Department of Housing and Urban Development ("HUD"). In response, three investigations[9] were

---

[6] In addition to the Media Defendants, Plaintiff names as Defendants and co-conspirators: Commissioners Adam Gutcheon and Carol Engleman; Resident-Commissioner Tariq Jamaal; State Representative Jane Garibay; the WHA; WHA employee Jennifer Schumsky; and residents of WHA properties, Andrew McCallister, Brian Smith, and Sally Grossman.

[7] Plaintiff alleges that McAllister and Jamaal coerced residents of WHA properties to sign the petition under fraudulent circumstances.

[8] Specifically, Plaintiff alleges that "[t]he petition was riddled with falsehoods, including but not limited to: that [Plaintiff] was harsh and abusive towards residents; that [Plaintiff] told residents they should be glad they have a roof over their heads and that if they did not like things they should go buy a house; that [Plaintiff] clandestinely removed two computers from [a] [c]ommunity [r]oom; that [Plaintiff] relentlessly bashed and smeared the previous Executive Director [of the WHA]; that [Plaintiff] fired experienced and competent employees and replaced them with ineffective and incompetent workers of her own choosing; that [Plaintiff] lies recklessly and shamelessly; that [Plaintiff] threatened and defrauded tenants; . . . that [Plaintiff] frequently threatened residents with eviction if they disagreed with her; that she was dishonest; that she towed visitor's vehicles; that she rejected the sound recommendations of WHA contractors; that she underestimated dangerous electrical problems; left tenants without heat for weeks, and even months; maintained a bodyguard . . .; viewed maintenance as tenant's financial responsibilities; extorted ill-gained revenue from tenants through usurious profit oriented collection practices backed by illegal, harassing threats; that she regularly terrorized indigent aged, mentally and physically disabled tenants with eviction; wasted administration expenditures by purchasing a new lawnmower, new truck, new snow blowers, a new covered, enclosed truck trailer, a new cavernous prefabricated shed, and most notably, a ridiculous and unnecessary deluxe golf-cart for management to use when touring the [small] grounds; that she provided below standards moving services done by non-professional, paid under-the-table, laborers that arrived with no equipment whatsoever and use[d] . . . a derelict shopping cart to haphazardly move tenants; that she regularly overlooked existing tenants and generously renovated units to preferred outsiders; that new handicapped units [were] hazardous to disabled tenants [because the] flooring [had] raised strips of vinyl between floor sections . . . and tenant complaints were ignored; that she maintained a failed strategy of dividing and isolating tenants from one another; [that] an isolated tenant is a weakened and vulnerable tenant and that is what this adversarial management wants; [and] that the tenants [stood] together [in] protest . . . [of] the hurtful policies and practices of the abusive, corrupt, and dishonest Executive Director."

[9] In Plaintiff's September 9, 2021 affidavit attached to her opposition to the Media Defendants' motions to dismiss, Plaintiff identifies each of these three investigations initiated in response to the petition. The Court considers Plaintiff's statements, submitted under oath, with respect to these investigations as judicial admissions. *See In re Motors Liquidation Co.*, 957 F.3d 357, 360–61 (2d Cir. 2020) ("[I]n order for a statement to constitute a judicial admission it must not only be a formal statement of fact but must also be intentional, clear, and unambiguous."); *see also Hoodho*

initiated in connection with the petition: (1) a federal investigation conducted by HUD, (2) a state investigation conducted by CHFA, and (3) an independent investigation conducted by a law firm hired by the WHA.[10]

Thereafter, Plaintiff further alleges that the false statements contained in the petition were widely published to the public through local Windsor newspapers. Plaintiff's Complaint specifically references three editorials authored individually by Commissioner Gutcheon and residents of WHA properties, and published by Windsor Journal. First, in January of 2021, Commissioner Gutcheon published an editorial in the Windsor Journal which allegedly repeated many of the falsities contained in the petition.[11] Second, in February of 2021, resident Grossman also published an editorial in the Windsor Journal which repeated many of the falsities contained in the petition.[12] Finally, in March of 2021, resident Smith, with the assistance of resident Grossman, likewise published an editorial in the Windsor Journal which repeated many of the falsities contained in the petition.[13] On May 10, 2021, after a vote of the Board of Commissioners, Plaintiff was terminated as Executive Director of the WHA for "insubordination, lack of candor and violations of the Personnel Policy. . . ."

---

*v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("Admissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record.").

[10] According to Plaintiff, the independent investigation conducted by a law firm hired by the WHA found no evidence of wrongdoing by the WHA or Plaintiff.

[11] Plaintiff alleges that Commissioner Gutcheon inaccurately stated that: over ninety percent of the residents of the subject WHA property knowingly and voluntarily signed the petition; the WHA failed to investigate the petition; the Board of Commissioners were praised for their loyalty; a member of the WHA Board mocked members of the Town Council; Plaintiff stole funds from the WHA; Plaintiff bullied, harassed, and threatened residents; Plaintiff charged residents usurious moving fees; Plaintiff paid laborers under-the-table to move residents.

[12] Plaintiff alleges that resident Grossman inaccurately stated that: Plaintiff hired an independent law firm to investigate the petition without the knowledge or permission of the Board of Commissioners; the WHA improperly contested the appointment of a new tenant commissioner because of his involvement in the petition; Plaintiff imposed retaliatory rent increases in excess of thirty percent on residents who submitted complaints.

[13] Plaintiff alleges that resident Smith inaccurately stated that: immediately upon being hired as Executive Director, Plaintiff terminated the existing landscaping contractor and instead hired "her own people;" Plaintiff threatened not to renew a resident's lease if "he wasn't quiet;" Plaintiff bullied, harassed, and threatened residents.

Based on the foregoing, Plaintiff asserts in her Amended Complaint defamation and false light claims against the Media Defendants. Particularly, with respect to Defendants Zepperi and Chaison, Plaintiff alleges they published "various articles"[14] containing the false statements originally authored by McAllister and Jamaal and set forth in the petition. Plaintiff alleges that Defendants Windsor Journal and Journal Inquirer published "various articles" authored by Defendants Zepperi and Chaison and "several editorials" authored by WHA residents and members of the Board of Commissioners, which contained the false statements originally set forth in the petition. Plaintiff further alleges that none of the Media Defendants contacted her to verify the accuracy of the statements contained in the petition and published in the articles and editorials. Nevertheless, Plaintiff alleges that the Media Defendants knew that the statements in the petition were false or recklessly disregarded the falsity of the statements.[15]

**Discussion**

---

[14] Plaintiff's Amended Complaint does not specifically reference any articles authored by Defendants Zepperi or Chaison. Indeed, it would be an understatement to say that Plaintiff has not met the somewhat particular pleading requirements for a defamation or false light claim *See Chertkova v. Connecticut Gen. Life Ins. Co*., No. CV98 0486346 (Berger, J.), 2002 WL 1902988, at *4 (Conn. Super. Ct. July 12, 2002), *aff'd*, 76 Conn. App. 907, 822 A.2d 372 (2003) ("A claim of libel must be pled with specificity, as the precise meaning and choice of words employed is a crucial factor in any evaluation of falsity. The allegations should set forth facts . . . sufficient to apprise the defendant of the claim made against him. . . . [A] complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom."); *see Michel v. Bridgeport Hosp.*, No. 116015195 (Levin, J.), 2011 WL 1176885, at *17–18 (Conn. Super. Ct. Mar. 7, 2011) (dismissing defamation claim "on the ground[] that the plaintiff has not alleged sufficient facts to show the essential element of publication" and noting that "requiring the plaintiff to specifically plead the precise defamation facilitates the use and disposition of pretrial dispositive motions and a determination of whether the alleged defamation is privileged"). However, in her opposition to the Media Defendants' motions to dismiss, Plaintiff provides details regarding eight articles authored by Defendants Zepperi and Chaison and published by Defendants Windsor Journal and Journal Inquirer which allegedly contained false statements originally set forth in the petition. Plaintiff submitted those articles to the Court as exhibits. And because the Court dismisses the claims against the Media Defendants on constitutional grounds, the Court does not further address the inadequacy of the pleadings.

[15] Plaintiff's Amended Complaint sets forth six counts against Windsor Journal: three counts of defamation (Counts 18, 22, 23) and three counts of invasion of privacy by false light (Counts 28, 32, 33). Plaintiff's Amended Complaint sets forth one count against Zepperi: invasion of privacy by false light (Count 28). The Amended Complaint contains no additional allegations with respect to the Media Defendants or details with respect to any articles or editorials published by the Media Defendants. And although Plaintiff's proposed second amended complaint sets forth several counts of defamation and invasion of privacy by false light against Defendants Journal Inquirer and Chaison, Plaintiff does not identify them in any counts set forth in her Amended Complaint. The proposed second amended complaint, on the other hand, sets forth five counts of defamation (Counts 17, 18, 21–23) and six counts of invasion of privacy by false light (Counts 25, 27, 29, 31–33) against all of the Media Defendants.

The Media Defendants argue that Plaintiff's defamation and false light claims against them are barred by the Fair Report Privilege because the articles and editorials at issue accurately reported on matters of public concern.[16] Plaintiff argues that the Fair Report Privilege does not bar her claims because the Media Defendants published the allegedly defamatory statements with a malicious intent to harm Plaintiff's reputation. The Court agrees with the Media Defendants.

"The fair report privilege is well established." *Elder v. 21st Century Media Newspaper, LLC*, 204 Conn. App. 414, 422, 254 A.3d 344 (2021). "The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." *Id*. (citing 3 Restatement (Second), Torts, Report of Official Proceeding or Public Meeting § 611, p. 297 (1977)). The basis for the fair report privilege is "the public's interest . . . in having information made available to it as to what occurs in official proceedings and public meetings." *Elder*, 204 Conn. App. at 432; *see also* 3 Restatement (Second), § 611, comment (a), p. 297. "[I]f the report is accurate or a fair abridgment of the proceeding, an action cannot constitutionally be maintained for defamation." *Burton v. American Lawyer Media, Inc.*, 83 Conn. App. 134, 138, 847 A.2d 1115, *cert. denied*, 270 Conn. 914, 853 A.2d 526 (2004). "The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false and even if they are libel per se. Abuse of the privilege takes place, therefore, when the publisher does not give a fair and accurate report of the proceeding." *Id*.; *see also* 3 Restatement (Second), § 611, comment (a), p. 298. "Generally,

---

[16] The Media Defendants also argue that Plaintiff's Amended Complaint should be dismissed for failing to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6). Because the Court concludes that Plaintiff's claims against the Media Defendants are barred by the Fair Report Privilege, the Court need not and does not reach their alternative argument.

the determination of whether the contents of a newspaper article are privileged as fair reporting is an issue of law. *Burton*, 83 Conn. App. at 138 (citing *Goodrich*, 188 Conn. at 110–11).

> [T]he fair reporting privilege requires the report to be accurate. It is not necessary that it be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings. . . . The accuracy required is to the proceedings, not to the objective truth of the [alleged] defamatory charges. . . . Further, the fair report privilege affords leeway to an author who attempts to recount and popularize an . . . event. . . . The author's job is not simply to copy statements verbatim, but to interpret and rework them into the whole. . . . A fussy insistence upon literal accuracy would condemn the press to an arid, desiccated recital of bare facts. . . . [T]he author of a news article reporting on a [matter of public concern] has no duty to conduct an impartial investigation of the underlying facts of the [matter]—[t]he only question is whether the news article represents a substantially accurate report of the [matter of public concern] upon which it is reporting. . . .

*Elder*, 204 Conn. App. at 424 (citations omitted; internal quotation marks omitted). "[T]he privilege of fair comment [therefore] requires [the court] to read the allegedly libelous articles in their totality, in the context in which they were published." *Goodrich*, 188 Conn. at 120.

Plaintiff's supplemental exhibits to her opposition memoranda contain, *inter alia*, the petition (ECF No. 104-3) as well as twelve articles and editorials relevant to her claims against the Media Defendants.[17] (ECF No. 104-11) The Court has reviewed the statements in the petition and

---

[17] The articles and editorials relevant to Plaintiff's claims against the Media Defendants are as follows: (1) a January 8, 2021 letter to the editor of Windsor Journal authored by Commissioner Gutcheon, titled "There is a Problem in Housing Authority" (ECF No. 104-11 at 2); (2) a subsequent January of 2021 letter to the editor of Windsor Journal also authored by Commissioner Gutcheon, titled "It's Time for Action—Not Words" (ECF No. 104-11 at 3); (3) a January 22, 2021 Windsor Journal article authored by Zepperi, titled "Chair of WHA Board of Commissioners Resigns Member Calls for 'Good Faith Investigation'" (ECF No. 104-11 at 13); (4) a January 27, 2021 Journal Inquirer article authored by Chaison, titled "Protests Held Before Windsor Housing Authority Meeting" (ECF No. 104-11 at 16); (5) a January 29, 2021 Windsor Journal article authored by Zepperi, titled "WHA Tenants Ask for Safety and Respect" (ECF No. 104-11 at 15); (6) a February 26, 2021 letter to the editor of Windsor Journal authored by resident Grossman (ECF No. 104-11 at 50); (7) a March of 2021 letter to the editor of Windsor Journal authored by resident Smith (ECF No. 104-11 at 51–53); (8) a March 26, 2021 Journal Inquirer article authored by Chaison, titled "Windsor Housing Authority Director Sues Officials, Tenants, Accusing them of Bias" (ECF No. 104-11 at 54); (9) a March 26, 2021 Windsor Journal article authored by Zepperi, titled "WHA Commission has New Chair, Lawsuit Filed" (ECF No. 104-11 at 14); (10) an April 1, 2021 Journal Inquirer article authored by Chaison, titled "Windsor Housing Director: Attacks Are Race-Based" (ECF No. 104-11 at 20); (11) an April 13, 2021 Journal Inquirer article authored by Chaison, titled "Windsor Residents: Authority Executive Director Tried to Intimidate Them Out of Complaining" (ECF No. 104-11 at 22); and (12) a May 11, 2021 Journal Inquirer article authored by Chaison, titled "After Firing of Housing Authority Director, Windsor Tenants Hope for a Change." (ECF No. 104-11 at 38) The Court considers the petition

the articles and editorials at issue and concludes that the articles and editorials are protected and not actionable as a result.

### A. Articles Authored by Defendants Zepperi and Chaison and Published by Windsor Journal and Journal Inquirer

Plaintiff asserts defamation and false light claims against the Media Defendants based on their role in publishing eight articles which contained the allegedly false statements originally set forth in the petition. (ECF No. 104-11 at 13–16, 20, 22, 38, 54) These articles each addressed the proceedings with respect to the WHA residents' complaints as originally set forth in the petition, which concerned the management of the WHA, the condition of WHA properties, and the health and safety of WHA residents. The Court first observes that it is well established that "[t]he safety of the public is considered to be of public concern."[18] *Dept. of Children & Families v. Freedom of Information Commission*, 48 Conn. App. 467, 472 n. 5, 710 A.2d 1378, *cert. denied*, 245 Conn. 911, 718 A.2d 16 (1998); *see also DiMartino v. Richens*, 263 Conn. 639, 664–69, 822 A.2d 205 (2003).

Notwithstanding that the Media Defendants were reporting on matters of public concern, according to Plaintiff, these articles authored by Defendants Zepperi and Chaison and published by Defendants Windsor Journal and Journal Inquirer concerned Plaintiff's "stewardship of the WHA" and were "[e]ffectively parroting the false claims from the petition." (ECF No. 96 at 16);

---

as well as these articles and editorials for the purposes of the Media Defendants' motions to dismiss as documents either incorporated by reference in or integral to Plaintiff's Amended Complaint. *See Halebian*, 644 F.3d at 131("[O]n a motion to dismiss . . . pursuant to Rule 12(b)(6), the court may . . . rely upon documents . . . incorporated by reference in the complaint."); *see also Chambers*, 282 F.3d at 153 ("[T]he court may [also] . . . consider [a document] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."). The Court further notes that Plaintiff has taken a "kitchen-sink" approach to this litigation, alleging that all editorial and articles published in connection with the petition and subsequent proceedings were libelous, even those that do not mention or otherwise identify Plaintiff. (*See, e.g*., ECF No. 104-11 at 3, 15–19) Moreover, and for no reason apparent to the Court, Plaintiff avers in her opposition to the Media Defendants' motions to dismiss that numerous other allegedly libelous articles were authored by Steven Goode, a reporter for the Hartford Courant, and published by the Hartford Courant, notwithstanding that neither are parties to this litigation.

[18] Moreover, Plaintiff acknowledges that the surfacing of the petition initiated a federal, state, and independent investigation into the complaints set forth therein.

(ECF No. 97 at 16) Plaintiff further avers that these articles "quote" allegedly false statements made by WHA residents, members of the Board of Commissioners, and members of the WHA. The Court agrees with Plaintiff's characterization of the articles. And this is precisely why the Media Defendants are protected by the fair report privilege—they accurately report the content of the petition, the WHA proceedings, and people's statements regarding the same. Plaintiff does not argue that any of these allegedly false statements were misquoted or inaccurately conveyed by the Media Defendants. *See Burton*, 83 Conn. App. at 140–41 (finding that fair report privilege was not lost where "the statements complained of by the plaintiff were direct quotations from the [proceedings]").

The only inaccuracy that Plaintiff identifies in any of these articles is with respect to a January 22, 2021 Windsor Journal article authored by Defendant Zepperi, titled "Chair of WHA Board of Commissioners Resigns Member Calls for 'Good Faith Investigation.'" (ECF No. 104-11 at 13) Therein, Zepperi states that "more than [fifty]" WHA residents signed the petition. Plaintiff alleges that this figure is inaccurate. However, "[i]t is not necessary that [a report] be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings. *Elder*, 204 Conn. App. at 424. "As [the Connecticut] Supreme Court stated in *Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 320, 477 A.2d 1005 (1984), "[a]ny deviations from or embellishments upon the information obtained from the primary sources relied upon were miniscule and can be attributed to the leeway afforded an author who attempts to recount and popularize an . . . event." *Elder*, 204 Conn. App. at 427. "A fussy insistence upon literal accuracy would condemn the press to an arid, desiccated recital of bare facts." *Strada*, 193 Conn. at 321.

10

In sum, the articles authored by Defendants Zepperi and Chaison, and published by Defendants Windsor Journal and Journal Inquirer, were substantially true accounts of the contents of the petition and subsequent proceedings and accurate quotations of the statements made by WHA residents, members of the Board of Commissioners, and members of the WHA. Accordingly, these articles cannot constitutionally serve as a basis of liability for defamation or false light against the Media Defendants. *See Elder*, 204 Conn. App. at 426 ("[A]s long as the matter published is substantially true, [a media defendant is] constitutionally protected from liability.") (citing *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 132, 448 A.2d 1317 (1982)).

**B. Editorials Authored by WHA residents and Commissioner Gutcheon, and Published by Windsor Journal and Journal Inquirer**

Plaintiff also asserts defamation and false light claims against the Media Defendants based on their role in publishing four "letters to the editor" of Windsor Journal that were authored by WHA residents and Commissioner Gutcheon. As an initial matter, Plaintiff does not allege that Defendants Zepperi or Chaison had any role in authoring or publishing these letters to the editor. Rather, Plaintiff alleges that Defendants Windsor Journal and Journal Inquirer published these editorials and that they contained numerous of the false statements originally set forth in the petition.

In *Dow v. New Haven Indep., Inc.*, the plaintiff, a former-superintendent of the New Haven public schools, brought a libel action against the defendant, a local New Haven newspaper, based upon its publication of "an editorial that appeared on the opinion-editorial page" of the defendant's newspaper. 41 Conn. Supp. 31, 32, 549 A.2d 683 (Super. Ct. 1987). The editorial criticized the plaintiff's views and initiatives in his capacity as the superintendent. *Id*. The court found the fact that the allegedly libelous statements were contained "in an editorial on the opinion-editorial page"

11

of the newspaper to be "of great significance." *Id*. at 42. Specifically, the court found that "[t]he label of editorial by the press clearly puts the world on notice that [the statement expressed therein] is merely [an] opinion." *Id*. at 45. The court further determined that no reader would take any of the statements contained in the editorial literally because "[i]t is clearly entitled . . . editorial in bold and outstanding letters. And it is obvious that editorial has its common, ordinary meaning—that is, an article in a publication expressing the opinion of its editors or publishers." *Id*. at 41–42. Accordingly, the court concluded that the "statements in the editorials (clearly labeled as such) about public officials concerning matters of public concern" are entitled to constitutional privilege "[b]ecause of the profound commitment to freedom of the press as demonstrated in §§ 410 and 511 of article first of the constitution of the state of Connecticut and the history of this state." *Id*. at 44.

Similarly, here, the editorials were published on Defendants' Windsor Journal and Journal Inquirer "letters to the editor" page, clearly labeled as such in bold and outstanding letters. (ECF No. 104-11 at 2, 3, 50) They clearly reflect the opinions of the authors that there were significant issues with how the WHA was managing the property at issue.[19] And it appears that the bases for the opinions may include the allegations contained in the petition. However, these editorials were not offered as the opinions of either the Windsor Journal editorial board or the Journal Inquirer editorial board. Rather, they were authored by WHA residents and Commissioner Gutcheon.

---

[19] "An opinion . . . is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich*, 188 Conn. at 111 (citing 3 Restatement (Second), Torts § 566, p. 171). Statements are considered opinions "if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated. . . . [T]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the . . . writer's opinion." *Goodrich*, 188 Conn. at 111. The Court notes that honest expressions of opinions on matters of public concern are not actionable under a claim of defamation or invasion of privacy by false light. *See id.* at 117, 121 (opinion privileged as fair comment where facts upon which it is based are truly stated or privileged and where comment is recognizable statement of opinion); *Miles v. Perry*, 11 Conn. App. 584, 595, 529 A.2d 199 (1987) ("[t]he privilege of fair comment is a common law qualified privilege arising out of an occasion to express an opinion or otherwise comment on matters of public interest").

Defendants Windsor Journal and Journal Inquirer merely provided the forum for the expression of the opinions and did not censor or alter the opinions in any fashion. *See Burton*, 83 Conn. App. at 140 (stating that to qualify for the fair report privilege, "it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression" and clarifying that "[t]he accuracy required is to the proceedings, not to the objective truth of the defamatory charges") (citing 3 Restatement (Second) § 611, comment (f), p. 300). And like the articles at issue here, these editorials each addressed matters of public concern with respect to the management of the WHA, the condition of WHA properties, and the health and safety of WHA residents. Moreover, some provided information to local readers as to how the WHA would officially proceed in light of the complaints set forth in the petition, which further serves the purpose of the fair report privilege. *Elder*, 204 Conn. App. at 432; 3 Restatement (Second), § 611, comment (a), p. 297. Defendants Windsor Journal and Journal Inquirer were "performing [their] wholly legitimate function as . . . community newspaper[s] when [they] published full [editorials regarding] these public debates in its news columns. . . . [and] the reports were accurate and full." *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 13 (1970).

Notwithstanding, Plaintiff complains that none of the Media Defendants contacted her to verify the accuracy of the statements contained in the petition and published in the articles and editorials, and that the Media Defendants knew that the statements in the petition were false or recklessly disregarded the falsity of the statements. However, the Media Defendants "had no duty" to "conduct an impartial investigation" before publishing the articles and editorials. *Burton*, 83 Conn. App. at 141. "The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true, and even when he knows them to be false." *Burton*, 83 Conn. App. at 138; 3 Restatement (Second), § 611, comment (a), p. 298.; *see Elder*, 204 Conn.

13

App. at 424 ("[T]he author of a news article reporting on a [matter of public concern] has no duty to conduct an impartial investigation of the underlying facts of the [matter]."); *see also Goodrich*, 188 Conn. at 124 (holding that reporter's failure to interview plaintiff personally did not support claim for defamation). "The only question is whether the news article represents a substantially accurate report of the proceeding upon which it is reporting." *Elder*, 204 Conn. App. at 424. *See also Burton*, 83 Conn. App. at 138 ("Abuse of the privilege takes place . . . when the publisher does not give a fair and accurate report of the proceeding."). Plaintiff does not allege that the Media Defendants' publications did not give a fair and accurate report of the petition, subsequent WHA proceedings, or statements regarding the same.[20]

Accordingly, because the Court concludes that the articles and editorials published by the Media Defendants are substantially accurate accounts of the petition, the subsequent WHA proceedings, and statements regarding the same, they are entitled to the fair report privilege. *See Elder*, 204 Conn. App. at 428 (holding that the fair report privilege was not lost and "plaintiff's claim of malice fails as a matter of law" where the articles at issue "were fair and accurate abridgements" of proceedings).[21]

---

[20] The Court has reviewed every article and editorial complained of by Plaintiff. It is undisputable that the articles accurately reported the complaints contained within the petition and the events surrounding Plaintiff's tenure, some of which do not mention Plaintiff at all. (*See, e.g.*, ECF No. 104-11 at 15–19) And the editorials are clearly expressions of the opinions of Commissioner Gutcheon and residents of WHA properties, one of which does not mention Plaintiff at all. (*See, e.g.*, ECF No. 104-11 at 3) *See Simms*, 308 Conn. at 547–48 ("To establish a prima facie case of defamation, the plaintiff must [at least] demonstrate that . . . the defamatory statement identified the plaintiff to a third person."); *see also Goodrich*, 188 Conn. at 131 ("The essence of a false light privacy claim is that the matter published [is] concerning the plaintiff['s] . . . character, history, activities or beliefs. . . ."). The Amended Complaint contains absolutely no non-conclusory allegations that would establish a defamation or false light claim against the Media Defendants.

[21] In her opposition to the motions to dismiss, although nowhere alleged in her Amended Complaint or proposed second amended complaint, Plaintiff argues that the Media Defendants are also liable to Plaintiff for civil conspiracy. The Court notes that civil conspiracy is not an independent cause of action, but rather requires allegations of liability in connection with an independent underlying tort. *See Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC*, 739 F. Supp. 2d 109, 113 (D. Conn. 2010) ("[U]nder Connecticut law, civil conspiracy is not an independent cause of action. 'Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort.'") (citing *Macomber v. Travelers Prop. & Casualty Corp.*, 277 Conn. 617, 636, 894 A.2d 240 (2006)). Neither Plaintiff's Amended Complaint or proposed second amended complaint contains any allegation of

Finally, the Court has examined Plaintiff's proposed second amended complaint to determine whether the deficiencies identified in the Amended complaint can be corrected. The Court concludes that any efforts to amend the claims against the Media Defendants would be futile because Plaintiff's claims against these Defendants are constitutionally barred. The Media Defendants' motions to dismiss are therefore granted with prejudice. *Villano v. Woodgreen Shelton, LLC*, No. 3:19-CV-00097 (KAD), 2019 WL 4889013, at *2 (D. Conn. Oct. 3, 2019); *see Danis v. Moody's Corp.*, 627 Fed. Appx. 31, 32 (2d Cir. 2016) (summary order) (affirming dismissal with prejudice due to futility); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."); *see Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 386 (D. Conn. 2008) (noting that leave to amend may be denied where the proposed amendment would be futile).[22]

**Conclusion**

For the foregoing reasons, the Media Defendants' motions to dismiss are GRANTED. (ECF Nos. 60, 71) The Clerk of the Court is directed to terminate Defendants Windsor Journal, Zepperi, Journal Inquirer, and Chaison. And in light of the foregoing, Plaintiff's motion for leave to file a second amended complaint is DENIED. (ECF No. 125)

---

tortious conduct by the Media Defendants other than claims of defamation and false light. Accordingly, the Court finds no basis to consider any alleged civil conspiracy claims against the Media Defendants.

[22] Particularly, with respect to Defendants Journal Inquirer and Chaison, "there is no indication that a valid claim might be stated against [these] [D]efendant[s] because there are no factual allegations asserted against [them]." *Villano*, 2019 WL 4889013, at *2; *see Hariprasad v. New York*, 722 Fed. Appx. 102, 103 (2d Cir. 2018) (summary order) (affirming dismissal of complaint without leave to amend where plaintiff "alleged no factual allegations" against defendant and, therefore, "there [was] no indication that [plaintiff] might plead a valid claim").

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of July 2022.

                                  */s/ Kari A. Dooley*

                                  KARI A. DOOLEY

                                  UNITED STATES DISTRICT JUDGE