UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URLEEN NAUGHTON<br>      Plaintiff | CASE NO.: 3:21-cv-402 (KAD) |
| v. | |
| ADAM GUTCHEON, is sued in his personal capacity, JANE GARIBAY, is sued in her personal capacity, DONALD TRINKS, is sued in his personal, LISA BRESS, is sued in her personal capacity, SALLY GROSSMAN, is sued in her personal capacity, TAARIQ JAMAAL, is sued in his personal capacity, BRIAN SMITH, is sued in his personal capacity, CAROL ENGLEMANN, is sued in her personal capacity, JENNIFER SCHUMSKY, is sued in her personal capacity, ANDREW MCALLISTER, is sued in his personal capacity, WINDSOR HOURSING AUTHORITY, is sued as the NAUGHTON'S EMPLOYER, WINDSOR JOURNAL WEEKLY, is sued as an entity, ANTHONY ZEPPERI, is sued in his personal capacity, JOURAL INQUIRER, is sued as an entity JOE CHAISSON, is sued in his personal capacity,<br>      Defendants. | OCTOBER 5, 2022 |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES

Plaintiff, Urleen Naughton, files this Motion in Opposition to the motion for attorney's fees filed on behalf of Defendants Sally Grossman, Brian Smith, and Andrew McAllister.  **Ct. Doc 140.** For the reasons set forth more fully below, Defendants are not prevailing parties entitled to any award of attorney fees pursuant to 42 U.S.C. 1988 or any other statutory or common law basis.

1

## I.      BACKGROUND FACTS

Plaintiff filed her multi-count complaint against fifteen (15) individual and institutional defendants as a consequence of her ouster as Executive Director of the Windsor Housing Authority in May 2021.  The three named defendants who are the subject of this motion were sued in their individual capacity.  On August 24, 2022, the Court dismissed the Plaintiff's federally based counts, and declined to exercise supplemental jurisdiction as to the Plaintiff's state law claims.  **Ct. Doc. 138.** In essence, the Court declined supplemental jurisdiction over Plaintiff's claims for interference with contractual rights, negligent Infliction of emotional distress, intentional infliction of emotional distress, defamation, and false light, as to all eleven (11) non-media defendants.  **Ct. Doc. 138.**

Evidence that strongly suggests that the claims were not brought in bad faith nor were frivolous, unreasonable or groundless include the following facts pled in the complaint, included but are not limited to allegations that:

(a)  Defendants Grossman and Smith were among those who each commented on drafts of the petition, and wrote articles and editorials at various times that contained numerous false and defamatory statements related to Naughton's performance as Executive Director of the WHA;

(b)  in February of 2021, Defendant Grossman, also published an editorial in the Windsor Journal Weekly which repeated many of the falsities contained in the petition;

(c)  in March of 2021, Defendant resident Smith, with the assistance of Defendant Grossman, published an editorial in the Windsor Journal Weekly which repeated many of the falsities contained in the petition;

(d)  Plaintiff alleges that resident Smith inaccurately stated that: immediately upon being hired

as Executive Director, Plaintiff terminated the existing landscaping contractor and instead hired "her own people; (tacitly implying that her own people was meant to be racial minorities)" Plaintiff threatened not to renew a resident's lease if "he wasn't quiet;"

(e)  on March 21, 2021, Defendants MCallister, Grossman, Smith, and other WHA defendants held a meeting to plan Plaintiff's removal as the WHA's Executive Director. Two other African American members of the Board of Commissioners were not notified of this meeting. These Defendants planned to replace the two remaining African American Commissioners with Defendants Jamaal and Engleman, who publicly favored terminating Plaintiff; the implication was that this jockeying to the African American board members was intended to stack a racial "deck" against Plaintiff;

(f) Smith, McAllister, and Grossman were among a group of several individuals who began a concerted effort to oust Plaintiff from her position as Executive Director of the WHA, all the while taking active steps to ensure that two African American Commissioners were not informed of or invited to a meeting held a meeting to discuss Plaintiff's termination.

More specifically:  Naughton's Third Amended Complaint provided that on August 20, 2020, and later on, Defendants knew that Naughton had signed a new four-year contract with the WHA.  **Ct. Doc.** 3rd Amended Complaint, Para # 5.

On January 7, 2021, Defendant Smith met with Defendant Gutcheon in the parking lot of the WHA and planned their scheme to target, threaten, write editorials in the local papers, and replace the two African America Commissioners on the WHA Board, with Defendants Jamaal and Engleman who were in favor of terminating Naughton.  **Ct. Doc.**  Third Amended Complaint, Para # 6.

Beginning in January 2021, Sally Grossman and Smith worked hand in hand to jointly publish editorials detailing the falsities from the "petition" authored by Defendants Jamaal and McAllister to

local newspapers asserting that Naughton was incompetent, had stolen WHA funds, hired her own people, spent WHA funds irresponsibly, bullied tenants, and threatened them with eviction if they did not remain quiet in their opposition to her.  **Ct. Doc.** Third Amended Complaint, Para #10.

Furthermore, Defendant Smith met with Defendant Gutcheon on January 7, 2021, in the parking lot of the WHA, and targeted, and planned to smear Naughton and then terminate her from the WHA, by appointing Jamaal and Engleman to the Board of Commissioners, while forcing out two black commissioners, who Gutcheon believed were partial to Naughton.  Defendants Grossman and Smith were actively "cheered on" by Defendants Trinks and Bress, who published statements, including text messages in support of their efforts to oust Naughton.  **Ct. Doc.** Third Amended Complaint, Para #12, #15, 28-29, 31-32, 45-63, and 71-74.

In April 2021, Defendant Smith wrote in a text message to a fellow WHA resident Sylvia (Sylvia affidavit) that Naughton "was a bitch, she was evil, incompetent, she was an asshole who ha[d] ruined [his] home, she stole funds, and the bitch did not show up at the meeting [in March 2021] knowing she would be fired [by Gutcheon, Jamaal and Engleman as commissioners of the WHA]."  **Ct. Doc.** Third Amended Complaint, Para #34 and 79.

For their part, Defendants Jamaal and McAllister published their "petition," in late October 2020, which was **riddled with falsehoods**, including but not limited to:

> that Naughton was harsh and abusive towards residents; that Naughton told residents they should be glad they have a roof over their heads and that if they did not like things they should go buy a house; that Naughton **clandestinely removed two computers from the Community Room**; that Naughton relentlessly bashed and smeared the previous Executive Director; that Naughton fired experienced and competent employees and replaced them with ineffective and incompetent workers of her own choosing; that Naughton lies recklessly and shamelessly; that **Naughton threatened and defrauded tenants; and that Naughton frequently threatened residents with eviction if they disagreed with her**; that **she was dishonest**; that she towed visitor's vehicles; that she rejected the sound recommendations

of WHA contractors; that she underestimated dangerous electrical problems; **left tenants without heat for weeks, and even months**; maintained a bodyguard on the Millbrook premises; **viewed maintenance as tenant's financial responsibilities; extorted ill-gained revenue from tenants through usurious profit oriented collection practices backed by illegal, harassing threats**; that she regularly terrorized indigent aged, mentally and physically disabled tenants with eviction; **wasted administration expenditures by purchasing a new lawnmower, new truck, new snow blowers, a new covered, enclosed truck trailer, a new cavernous prefabricated shed, and most notably**, a ridiculous and **unnecessary deluxe golf-cart for management to use when touring the [small] grounds; that she provided below standards moving services done by non-professional paid under the-table laborers that arrived with no equipment whatsoever and use [sic] a derelict shopping cart to haphazardly move tenants**; that **she regularly overlooked existing tenants and generously renovated units to preferred outsiders**.
**[Emphasis added] Ct. Doc.** Third Amended Complaint, Para # 34.

Naughton's doctors placed her on sick leave from the WHA on March 24, 2021, and Naughton notified the defendants of this fact, after their activities led to threats of physical violence against her. **Ct. Doc.** Third Amended Complaint, Para # 80-82, 268, 489, 494-496.  Naughton's documented sick leave was still active and in effect when the Defendants unceremoniously fired her on May 10, 2021. **Ct. Doc.** Third Amended Complaint, Para # 268-269, 271, 287, and 489.

## II.  <u>STANDARD OF REVIEW</u>

Attorney's fees may be awarded to a prevailing defendant pursuant to 42 U.S.C. Sec. 1988 but only if the plaintiff's claim is found to be frivolous, unreasonable or groundless. <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)… See also <u>J & J Anderson, Inc. v. Town of Erie</u>, 767 F.2d 1469 (10th Cir. 1985).

Generally, litigants in the United States must pay their own attorney's fees. <u>Alyeska Pipeline</u>

Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612 1616, 44 L.Ed.2d 141 (1975)." Unity

Ventures v. County of Lake, 894 F.2d 250 (7th Cir. 1990).

A prevailing defendant, "…must demonstrate that the plaintiff brought her action in

subjective bad faith, or that "the plaintiff's action was frivolous, unreasonable, or without

foundation, even though not brought in subjective bad faith" in order to collect attorney's fees.

Christianburg Garment Co. v. EEO, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). C

The Supreme Court has cautioned lower courts not to rely upon 20-20 hindsight when deciding

if a plaintiff's suit is frivolous, unreasonable, or groundless:

> [I]t is important that a district court resist the understandable temptation
> to engage in post hoc reasoning by concluding that, because a plaintiff
> did not ultimately prevail, his action must have been unreasonable or
> without foundation…. No matter how honest one's belief that he has
> been the victim of discrimination, no matter how meritorious one's
> claim may appear at the outset, the course of litigation is rarely
> predictable. Decisive facts may not emerge until discovery or trial. The
> law may change or clarify in the midst of litigation."   Christianburg,
> 434 U.S. at 421-22, 98 S.Ct. at 700.

Nowhere in the decision of this Court was there any finding that the complaint was

frivolous, unreasonable or brought in bad faith.  The mere fact that the court found the facts and

inferences to be drawn from them to not meet the Iqbal and Twombley standard does not transform

the complaint into a frivolous claim.

The Court also did not dismiss the state law claims with prejudice presumably because those

claims are plausible.  However, having dismissed the federal causes of action, the Court found no

basis to exercise supplemental jurisdiction over those claims.  Reading the complaint allegations

of both federal and state law claims, it is clear that the state law and federal statutory claims were

closely intertwined. Thus, although the court found the federal claims to be implausible, that does

not result in a finding that the remaining claims were implausible nor brought in bad faith nor were frivolous.

The policy reasons for 42 U.S.C. Section 1988 allowance of attorney fees to the prevailing party is not to punish either party for attempting to bring a federal claim when they fail in that effort.   Actually, it is to reward "private attorney generals" in enforcement of federal anti-discrimination laws.   See also James v. Boise, 577 U.S. 306, 136 S.Ct. 685 (2016) *Per Curiam* (even state courts must award attorney's fees to prevailing defendants only in accordance with federal laws; Section 1988 to permits a prevailing defendant to recover fees only if "the plaintiff 's action was frivolous, unreasonable, or without foundation.)"   The facts of the federal and state law claims were so inextricably intertwined that it cannot be said to have been unreasonable for Plaintiff to include them in one complaint including those against these three Defendants Grossman, Smith and McAllester.

Furthermore, while the court found it procedurally improper for Plaintiff to respond to the Motion to Dismiss by way of multiple affidavits, that evidence demonstrated additional facts relevant to her claims of racial animus, a widespread conspiracy to oust Plaintiff from her position, and the role played by these Defendants as well as the others.

See for example the proposed affidavit of Nelson Sylvia at paragraphs 9, 11, 13-14, 2026; affidavit of WHA Board Chairman Herman Woodard at paragraphs 9, 10, 13, 20, 27; affidavit of Randy McKenny at paragraph 15; affidavit of Robert Berman paragraphs 32-35; affidavit of Shelley McDougall paragraphs 28-29; affidavit of Brandy Cook paragraphs 10-23; and affidavit Della Rondinone paragraphs 7-13.

In the post-Twombley and Iqbal era, notice has been taken of the fact that an "information imbalance" often occurs whereby Plaintiff's, prior to discovery, may not have all other facts that

support their claim when the information is in the hands of the defendant. See generally Dodson, Scott, "Federal Pleading and State Presuit Discovery" (2010). Faculty Publications. 30. https://scholarship.law.wm.edu/facpubs/30.   At the initial pleadings stage, when a party such as Plaintiff had only the information regarding the massive marshaling of resources by a large number of individuals who appeared to relieve Board members of their positions based upon their race, in order to oust her, and where there was evidence that prior non-African American executive Director had not been similarly treated, there was every reason for her to plead these facts as a federal race-based claim.

### III. CONCLUSION

For the foregoing reasons it is respectfully submitted that Defendants Grossman, Smith and McAllister have failed to the meet the standard of demonstrating bad faith, frivolous, or unreasonable action by Plaintiff in initiating this lawsuit. Moreover, they have failed to support their bald assertion regarding the claimed attorney fees amount. The Motion should be dismissed.


**FOR THE PLAINTIFF**
**RICHARD C. GORDON**

BY: */s/Richard Gordon*                                        Dated:  October 5, 2022
Richard Gordon, Esq.,
Fed Bar # ct 27288
40 Court Street
Windsor, CT 06095
Tel: (860) 534-0547
Email:  rcgordonlaw@gmail.com

## CERTIFICATION

This is to certify that the foregoing Opposition to Defendants' Motion for Attorney Fees

was filed on October 5, 2022. All parties may access this filing through the court CMECF system.


**FOR THE PLAINTIFF**
**RICHARD C. GORDON**

BY: */s/Richard Gordon*                                    Dated:  October 5, 2022
Richard Gordon, Esq.,
Fed Bar # ct 27288
40 Court Street
Windsor, CT 06095
Tel: (860) 534-0547
Email:  rcgordonlaw@gmail.com