UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| URLEEN NAUGHTON, ) | CASE NO. 3:21-cv-402 (KAD) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| GUTCHEON, *et al.*, ) | April 21, 2023 |
| *Defendants*. ) | |

MEMORANDUM OF DECISION
RE: DEFENDANTS GROSSMAN, SMITH, AND MCALLISTER's MOTION FOR ATTORNEYS' FEES (ECF NO. 140)

Kari A. Dooley, United States District Judge:

Plaintiff Urleen Naughton commenced this civil rights action asserting thirty-eight causes of action against fifteen defendants. She included sixteen federal law claims and twenty-two state law claims alleging, *inter alia*, violations of her equal protection and substantive due process rights. Plaintiff alleged an overarching conspiracy among the Defendants to remove her from her position as the Executive Director of the Windsor Housing Authority on account of her race and national origin. The Court granted Defendants' Motions to Dismiss, declined to exercise supplemental authority over remaining state law claims, and judgment accordingly entered in favor of Defendants and against Plaintiff. Three Defendants, Grossman, Smith, and McAllister now move for an award of attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of $22,680.00. For the reasons that follow, Defendants' Motion for Attorneys' Fees is DENIED. (ECF No. 140)

**Standard of Review**

In "any action or proceeding to enforce a provision" such as 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "A district court may in its discretion award attorney's fees to a prevailing defendant in a [civil rights] case upon a finding that the

plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978). In so holding, the Supreme Court cautioned that:

> [A] district court [should] resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421–22.

A district court may grant reasonable fees to a prevailing defendant in a case with both frivolous and non-frivolous claims, "but only for costs that the defendant would not have incurred but for the frivolous claims." *Fox v. Vice*, 563 U.S. 826, 829 (2011); *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014).

A district court's award or denial of attorneys' fees under § 1988 is reviewed "for abuse of discretion, mindful that abuse of discretion—already one of the most deferential standards of review—takes on special significance when reviewing fee decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." *Carter*, 759 F.3d at 163–64 (citing *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012)). The determination as to whether a claim was frivolous, unreasonable, or groundless is also "ordinarily reviewed not for clear error but rather for abuse of discretion" and requires "an evaluation of the allegations and the proof in light of the controlling principles of substantive law." *LeBlanc-Sternberg v. Fletcher*, 143

F.3d 765, 770 (2d Cir. 1998). "A claim is frivolous where it lacks an arguable basis in either law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citation and quotations omitted).

**Facts and Procedural History**

The Court assumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the instant motion.

Plaintiff alleged that, "beginning in late October 2020, members of the Board of Commissioners, the [Windsor Housing Authority ("WHA")], and WHA residents began a concerted and conspiratorial effort to oust Plaintiff from her position as Executive Director on account of her race and national origin." Mem. of Decision, ECF No. 138 at 6. As part of these efforts, Defendant McAllister and a resident WHA Commissioner authored and circulated a petition to remove Plaintiff as Executive Director. *Id.* Plaintiff alleged that several defendants, including Defendants Grossman and Smith, commented on drafts of that petition. *Id.* at 6–7. Thereafter, the petition was presented to the WHA, the Windsor Town Council, the Board of Commissioners, the Connecticut Housing Finance Authority ("CHFA"), and the U.S. Department of Housing and Urban Development ("HUD"). *Id.* at 7. The petition prompted investigations by the WHA, CHFA, and HUD and garnered significant public attention in local newspapers.[1] *Id.* Defendants Grossman and Smith published editorials, and the petition authored in part by Defendant McAllister was quoted in several articles. *Id.* at 7–8. Plaintiff also alleged that Defendant Smith made false and defamatory statements to a third person and that Defendants McAllister, Grossman, and Smith, along with other defendants, held a meeting to discuss Plaintiff's removal as Executive Director. *Id.* at 9.

---

[1] Plaintiff included defamation and related claims against the local newspapers who reported on the petition as well as reporters who authored articles regarding these events. These defendants are referred to as the "Media Defendants."

On March 23, 2021, Plaintiff filed her federal lawsuit. On May 10, 2021, the Board of Commissioners voted to terminate Plaintiff as Executive Director of the WHA for "insubordination, lack of candor and violations of the Personnel Policy." *Id.*

All Defendants moved to dismiss the complaint in its entirety. On July 18, 2022, the Court dismissed the case as to the Media Defendants[2] and on August 24, 2022, the Court dismissed the case as to the remaining defendants, including Defendants Grossman, Smith, and McAllister. The Court declined to exercise jurisdiction over Plaintiff's state law claims. Judgment accordingly entered in favor of Defendants on September 6, 2022.

**Discussion**

In seeking an award of attorney's fees, Defendants assert that Plaintiff's lawsuit was frivolous, unreasonable, or without foundation because the Complaint was unwieldy and difficult to navigate and devoid of factual allegations supporting an inference of discriminatory animus. Defendants also argue that the claims against them in particular were frivolous because the claims allege a section 1983 conspiracy, which requires that defendants acted under color of state law, and Grossman, Smith, and McAllister were not state actors and could not plausibly be alleged to be state actors. Indeed, these Defendants were simply residents of a WHA managed property. Plaintiff responds that the Court's finding that the Complaint did not meet pleading standards does not mean that it was frivolous, unreasonable, or brought in bad faith. Plaintiff further responds that the Court dismissed the state law claims because there was no basis to exercise supplemental jurisdiction over those claims.[3]

---

[2] The Court dismissed the defamation and related claims against reporter defendants and their employers under the "fair reporting privilege" doctrine. *See* Mem. of Decision, ECF No. 137.

[3] The Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims, and did not opine on "the issues raised as to the sufficiency of the allegations in support of these claims nor the legal bases upon which dismissal was sought." *See* Mem. of Decision, ECF No. 138 at 20.

There are two primary purposes for the fee provision in § 1988: (1) to make it easier for a plaintiff of limited means to bring a meritorious suit, and (2) to deter the bringing of lawsuits without foundation by providing that the prevailing party—be it plaintiff or defendant—could be awarded legal fees. *See Christianburg Garment Co.*, 434 U.S. at 420. Notwithstanding, "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006); *see also Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 230 (2d Cir. 2004) ("Hindsight proves that plaintiffs' allegation . . . was very weak, but it was not completely without foundation."). The Second Circuit's "hesitan[cy] to award attorney's fees to victorious defendants in § 1983 actions," stems from "concern[s] about the potential chilling effect on § 1983 plaintiffs—who are the chosen instrument of Congress to vindicate a policy of the highest national priority." *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (internal quotation marks omitted).

Under the circumstances presented here and on the current record, the Court declines to award these defendants attorney's fees. First, although Defendants prevailed on the section 1983 claims, they are not prevailing parties on Plaintiff's state law claims as the Court made no determination as to the merits or viability of those claims. Rather, the Court, upon dismissing Plaintiff's federal claims, declined to exercise supplemental jurisdiction over the remaining state law claims. Declination of supplemental jurisdiction does not necessarily confer prevailing party status on a defendant unless the state law claims truly cannot be refiled in state court. *See Carter*, 759 F. 3d at 166 ("Other courts have ruled that a declination to exercise supplemental jurisdiction is insufficient to confer prevailing party status on a defendant, since those claims could later be refiled.") (citing *Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1024 (9th Cir. 2009)); *Pang v. Flying Horse Trucking Co. Ltd.*, 2022 WL 718436, at *3 (E.D.N.Y. Feb. 23, 2022) ("Given

the nature of Plaintiff's claims, the applicable law, the relatively short period of time that Plaintiff's claims were pending in this case, and the likelihood that Plaintiff will refile the NYLL claims in state court, an award of fees and costs is not warranted in this case"). The Court notes that Plaintiff has indeed filed her state law claims against Defendants Grossman, Smith, and McCallister (among others) in state court.[4]

While the Court held that the allegations in the Complaint were insufficient to plausibly allege the federal constitutional claims (and that the Complaint was unwieldy and difficult to comprehend), this does not require a finding, and the Court cannot conclude, that Plaintiff's federal claims were frivolous at their inception. The Second Circuit has cautioned that the Supreme Court's guidance in *Christiansburg* that courts should avoid deeming a complaint frivolous merely because a plaintiff ultimately did not prevail "is particularly pertinent to cases involving allegations of conspiracy. Conspiracies are 'by their very nature secretive operations that can hardly ever be proven by direct evidence.'" *LeBlanc-Sternberg*, 143 F.3d at 770 (citing *Rounseville*, 13 F.3d at 632). "[U]nsuccessful conspiracy claims are not unreasonable merely because they were based principally, or even entirely, on circumstantial evidence." *Id.*

The Court observes that Plaintiff's inclusion of these Defendants, who are clearly not state actors, could only succeed upon a finding that they conspired with state actors to violate her constitutional rights, which as noted is an oft difficult task. But, the Court did not reach the merits of the purported conspiratorial relationship between these Defendants and the state actors because the allegations did not support any inference of discriminatory animus in the first instance. Plaintiff did include allegations as to the involvement of these Defendants with the various state actors in

---

[4] *See Naughton v. Windsor Housing Authority, et al.*, No. HHD-CV22-6162854-S (Conn. Super Ct. filed Nov. 11, 2022). The public state court docket is subject to judicial notice. *See, e.g.*, *Nino v. Countrywide Home Loans, Inc.*, No. 3:18-cv-2086 (JCH), 2019 WL 1320282, at *4 n.5 (D. Conn. Mar. 22, 2019).

the events which gave rise to her termination. The claim that there was a conspiracy between the named defendants, state actors and non-state actors alike, was therefore not frivolous.

Ultimately, while the Court found that there were insufficient allegations to support a finding that any of the defendants, to include Defendants Grossman, Smith, and McAllister, acted with a discriminatory animus, it is clear that Plaintiff subjectively believed that there was a link between her protected status and her eventual removal as Executive Director of the WHA and that her ouster was the result of a conspiracy between all named defendants.[5] *See Moch v. Greenwich*, No. 3:11-cv-1398 (SRU), 2014 WL 1671774, at *3 (D. Conn. 2014). Although Plaintiff's federal claims were very weak and poorly pled, they were "not so frivolous as to warrant an award of attorneys' fees." *See, e.g.*, *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir. 2006) (upholding denial of attorneys' fees in Title VII action brought by white male alleging "Indian Conspiracy" in his workplace, even where plaintiff's claim was so weak that he abandoned it at oral argument on motion for summary judgment).

**Conclusion**

For the foregoing reasons, Defendants Grossman, Smith, and McAllister's motion for attorneys' fees is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of April 2023.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff also relies upon the many exhibits offered in opposition to the motion to dismiss, which, although the Court was precluded from considering them when deciding the motion to dismiss, further support her good faith belief. Without accepting this assertion wholesale, the Court agrees that these exhibits bring arguable color to her claims.